[Civ. No. 867.   First Appellate District.—October 20, 1911.]

REBINA LONGWILL STEVENSON, Appellant, v. SUN INSURANCE OFFICE, a Corporation, Respondent.

FIRE INSURANCE—POLICIES PROCURED BY BROKER—POWER TO CANCEL NOT IMPLIED—EXPRESS POWER TO REDUCE—ACTION BINDING INSURED.—Although, as a general rule, the authority of a fire insurance broker to procure insurance policies in various companies to a specified amount terminates upon his procuring the policies required, and confers upon him no implied power to cancel any policy, yet express power to cancel may be conferred upon him by

the insured by ordering the reduction of the insurance procured to a less total amount, and when shown, the broker's acts and agreements, in that behalf, will be imputed to and are binding upon the insured, it being clear that the order for reduction could not have been executed except by canceling one or more of the policies negotiated.

ID.—CANCELLATION OF PARTICULAR POLICY BEFORE FIRE—ACQUIESCENCE BY INSURED — ADJUSTMENT — REASON — CONFLICTING EVIDENCE.— Where the broker canceled a particular policy before the fire, and the insured recognized the fact that that policy had been actually canceled, and acquiesced in its surrender to defendant, after the fire, for the express reason that it had been previously canceled, and failed to include the same in his list of adjustable securities, it is immaterial that the insured denied having surrendered the policy for the reason stated by the broker as defendant's witness, since all conflict in the evidence must be resolved against the insured, as appellant, and in support of the verdict for respondent.

ID.—CANCELLATION NOT AFFECTED BY NONSURRENDER TO DEFENDANT BEFORE FIRE.—The contention of appellant that the policy cannot be considered as canceled merely because it was not formally and physically surrendered into the possession of the defendant prior to the fire is held to be without merit. The contract of insurance may be as readily rescinded as it was made by the mutual agreement of the parties, or their authorized representatives; and the final surrender of the policy is not necessary to a rescission and cancellation of the contract, but is at best a piece of evidence tending to show a cancellation. If the fact of rescission is shown by the agreement of the parties, it is as complete and effectual as if the policy had been actually indorsed "canceled" and surrendered into the possession of the defendant.

ID.—CONSTRUCTION OF CONTRACT OF INSURANCE—INTENTION OF PARTIES. A contract of insurance must be governed and interpreted by the same rules which ordinarily apply to other contracts, and it will be enforced only according to the manifest intention of the parties.

ID.—PROPER INSTRUCTIONS AS TO CANCELLATION.—The court properly instructed the jury that, if they found from the evidence that the broker was directed to cancel any particular policy, he would be bound by the direction; but that, if they found that he was given a general, unqualified order to cancel so much of the insurance ordered as might be necessary to reduce it to a specified sum, then his designation of the policy or policies to be canceled would be binding upon the plaintiff; and that if the minds of the parties had met upon the subject of cancellation, it was not necessary to a valid cancellation of the policy in suit that it be physically delivered and surrendered to the defendant prior to the fire.

ID.—PROPER REFUSAL OF PLAINTIFF'S REQUEST—IGNORANCE OF EXECUTION OF FIRST ORDER AT TIME OF ORDER TO REDUCE.—The court prop-

erly refused an instruction requested by the plaintiff which required a verdict for the plaintiff, if the jury found that plaintiff did not know that the broker had already executed the order first given, when the order to reduce the insurance was given. The record shows no effort of plaintiff to be informed on that subject, and his knowledge or lack of knowledge thereupon could not alter the situation or modify the duties and responsibilities of the parties under the absolute and unqualified order by plaintiff to reduce the amount of insurance first ordered.

ID.—EVIDENCE — CONVERSATION BETWEEN BROKER AND DEFENDANT'S MANAGER AS TO CANCELLATION OF POLICY.—The court properly admitted evidence of a conversation had between the broker, who was plaintiff's agent, and the manager of the defendant, with reference to the cancellation of the policy in controversy, tending strongly to show that the policy had been actually canceled before the fire.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank W. Murasky, Judge.

The facts are stated in the opinion of the court.

A. P. Black, and W. C. Sharpstein, for Appellant.

L. A. Redman, for Respondent.

LENNON, P. J.—The plaintiff brought this action to recover upon two policies of insurance. The case was tried with a jury, and this appeal is from the judgment rendered and entered upon a verdict which awarded the plaintiff the sum of $1,410.07 upon the first cause of action stated in her complaint, and in effect denied her the relief which she sought upon the facts stated in her second cause of action. The appeal, which was taken from the judgment only, is prosecuted under the provisions of section 941b, Code of Civil Procedure; it was taken to the supreme court in the first instance, and by that court transferred here for hearing and determination. The record before us is the judgment-roll and a bill of exceptions which purports to contain all of the evidence adduced at the trial.

The first cause of action stated in the plaintiff's complaint is founded upon a policy of fire insurance which called for $1,000 on the stock, and $1,000 on the furniture and fixtures

of the plaintiff.   To this cause of action the defendant interposed no defense.

The second cause of action was stated upon a policy of insurance for $3,000 on a stock of merchandise, which was destroyed by fire on the twenty-ninth day of February, 1908. While admitting the execution and delivery of the policy the defendant, as a defense to this cause of action, pleaded that "On February 28, 1908, the plaintiff and defendant agreed to cancel said policy, and said policy was on said day, at the request of the plaintiff theretofore made, canceled by the defendant, and thereafter, in conformity with said agreement and cancellation, plaintiff surrendered said policy to the defendant."

The plaintiff excepted to the verdict at the time of its rendition, upon the ground of the insufficiency of the evidence to support it, and in that behalf clearly and succinctly specified the particulars in which it was claimed that the evidence was insufficient.   Those particulars, in the form in which they were originally specified, are incorporated in and plainly made a part of the duly authenticated bill of exceptions, which purports to contain all the evidence; and as the specifications of insufficiency fully notified opposing counsel and the trial court of the precise points relied upon to support the appeal, the evidence and its sufficiency to maintain the judgment must be reviewed and determined.

The circumstances surrounding the procurement of the policy in controversy were these: The plaintiff was the owner of a toy and notion store originally located in Post street, in the city and county of San Francisco.   The plaintiff was about to remove her business to a new location in Market street, and through her son and manager directed and authorized one Kenna, an insurance broker, to·procure insurance upon incoming stock, which was to be installed in the plaintiff's store at the new location.   In accordance with his instructions Kenna placed a portion of the insurance with the defendant, and the policy in controversy, covering merchandise to the amount of $3,000, was issued and delivered to the plaintiff, and remained in her possession until after the building and its contents were destroyed by fire.   When the plaintiff's stock of merchandise had been fully removed from

the old to the new location Kenna, by direction of the plaintiff's manager, did what was necessary to have this policy transferred to the new location. The plaintiff, in addition to the $3,000 policy sued on, had, through the agency of Kenna, placed and was carrying insurance in several other companies, aggregating the sum of $20,000. All of the various policies which covered the latter amount had not been written and delivered to plaintiff at the time the premises were destroyed by fire; but shortly after the change of location was made Kenna by letter informed plaintiff of the status of all of the insurance which she was carrying, and advised and notified her that he "was having the policies that were to be transferred canceled and reissued" so as to have all of the insurance expire at one time. After the receipt of this information plaintiff's manager, while taking stock, concluded that it was not fully covered, and directed Kenna to increase the insurance to $30,000. Upon receipt of this order Kenna placed the additional insurance, but did not immediately notify plaintiff of that fact. Later, however, when plaintiff had concluded taking stock, she found that $25,000 insurance was all that was necessary to protect her from loss by fire. Thereupon plaintiff's manager called at the office of Kenna for the purpose of readjusting the amount of insurance originally ordered. Kenna was not at the office, and plaintiff's manager testified that he left an order with the clerk in charge to amend the previous order for insurance so as to have it read $25,000 on stock and $1,000 on furniture and office fixtures. However, the original order for insurance in the sum of $30,000, although not actually written in the form of policies, had been in fact executed by Kenna arranging for and securing covering notes, which bound the several companies undertaking the risks until such time as regular policies could be written and delivered. The order modifying the original request for insurance as given by the manager of plaintiff was taken down in writing by the clerk of Kenna, and subsequently verified by Kenna in a conversation over the telephone with Stevenson. As communicated to Kenna he understood the modified order to mean that the plaintiff desired to cancel $5,000 of the $30,000 insurance already secured upon the stock of merchandise. In this be-

half Kenna testified: "I had done this [procured the $30,000 on the stock] prior to February 27th, on which day I received an order through my assistant that Mr. Stevenson [plaintiff's manager] wanted $5,000 of insurance on the stock canceled, and to place $1,000 on furniture and fixtures. I got the order late on February 27th. On Saturday morning I went to the office of the office manager of the defendant, Mr. Henry, as was my practice at the end of the month, in regard to policies canceled. . . . I told Mr. Henry that Mr. Stevenson had ordered a part of their insurance canceled, and that the policy of $3,000, *the policy in controversy, was canceled.* Mr. Henry told me to obtain the policy and get it into the office to go along with the other cancellations before the books were closed for the month. I told him that I would. The fire occurred that night. . . . There was a policy of $2,000 in defendant, which is the policy described in the first cause of action. I did not discuss with Mr. Henry the changing of the $2,000, but it was fixed in my mind to change that policy. The actual change [on the $2,000] was made after the fire. I then indorsed the policy to cover $1,000 on stock and $1,000 on furniture and fixtures. I executed the order to give him $1,000 on furniture and fixtures by a rider on the $2,000 policy. I saw Mr. Stevenson on Monday after the fire. Before seeing him I arranged for an adjuster so that the loss could be adjusted without delay. I called upon Mr. Stevenson after I had arranged for the adjuster. I told him that I had canceled the $3,000 Sun policy and wanted it. . . . Mr. Stevenson obtained the policy and handed it to me. I told Mr. Stevenson that he was fortunate that the whole amount of the $5,000 he had ordered canceled had not all been canceled, because I had only attended to the canceling of the Sun policy. I had not time after getting his order to order the cancellation of any other policy. He thanked me for the interest I had taken in his loss and looking after him. I told him that the adjustment was going along. He made not a bit of objection to turning over the Sun policy to me, and it has ever since been in the office of the defendant. . . . The order to cancel $5,000 on stock was never fully completed. There was not any cancellation of any policy except the Sun. Actually there was only a reduc-

tion to $26,000, so that they had $1,000 more than they would have had if their order had been completed.''

The defendant's manager, Mr. Henry, in response to Kenna's notification that the policy in controversy was canceled, clearly indicated his assent to the cancellation, and requested Kenna to procure the policy and include it in his report of cancellations for the month.

Some time after the fire David B. Wilson, as the representative of the insurance companies, called upon the plaintiff's manager for the purpose of adjusting the loss. At the request of Wilson, Mr. Stevenson, plaintiff's manager, produced all the outstanding policies so that they might be adjusted. The policy in controversy, however, was not among them, and nothing was said about it by Stevenson. At that time Stevenson told Wilson that he had but $26,000 insurance upon the property at the date of the fire, and that he had produced all of the policies of every company that he was insured in.

It was conceded at the trial that Kenna was the agent of the plaintiff for the purpose of negotiating and placing the required insurance; but it is now urged upon behalf of the plaintiff that the evidence shows that Kenna's employment was only that of a broker, and as such his authority extended solely to the placing of insurance and not to its cancellation. With this contention we cannot agree. It is undoubtedly the rule, as suggested by counsel for plaintiff, that ordinarily the authority of an insurance broker terminates when he has placed the insurance and delivered the policies to his principal, and that under a mere employment to secure insurance no authority to cancel the same is given or implied. Authority to cancel, however, may be shown to have been conferred upon the broker, and when shown, his acts and agreements in that behalf will be imputed to and are binding upon the insured. The evidence in the case at bar is without conflict that the plaintiff's original order for insurance in the sum of $30,000 was in effect executed by Kenna before the modified order was given, and that Stevenson, the plaintiff's manager, did not know at the time he gave the modified order whether or not the original order had been executed. Stevenson, in giving the modified order, proceeded—so he testi-

fied—"just exactly as if it [the original order] had not been executed by sending in a new order for $25,000 instead of $30,000." In brief, all that was said, done and understood by the plaintiff through her manager and Kenna, her agent and broker, warranted Kenna in the conclusion and belief that Stevenson, in the event that the original order had not been executed, wanted merchandise insurance only to the extent of $25,000; but if, on the other hand, the original order had been executed, he wanted the merchandise insurance reduced to that amount. It is obvious that in either event the result to the plaintiff was the same, and the conclusion is unavoidable, it seems to us, that if Stevenson intended to withhold from Kenna authority to cancel any particular policy of the insurance already placed, the general and unqualified order for a reduction to $25,000 would not have been given. However that may be, it is clear that the plaintiff's modified order as conveyed to Kenna could not have been executed except by canceling one or more of the policies previously negotiated, and it necessarily follows that the modified order impliedly authorized and required Kenna to cancel so much of the insurance placed in the first instance not exceeding $5,000, and without regard to any particular policy or company, which, if cancellation was necessary, would bring the total insurance of the plaintiff within the desired limit of $25,000. That Stevenson so understood the situation, and fully recognized the fact that the policy in question had been actually canceled prior to the fire, may be fairly deduced from his acquiescence in the surrender of the policy after the fire for the express reason that it had been previously canceled. This deduction is strengthened by the further fact that Stevenson not only failed to include this particular policy in his list of adjustable insurance, but stated to the adjuster that at the time of the fire he had all told only $26,000 of insurance. It is true that Stevenson denied having surrendered the policy for the reason stated by Kenna; but Stevenson's explanation of what occurred in that connection evidently was not accepted by the jury; and in so far as his evidence conflicts in this and other particulars with the testimony adduced upon behalf of the defendant, it must be ignored upon this appeal.

There is no merit in the contention discussed and urged by plaintiff that the contract of insurance in the case at bar cannot be considered as canceled merely because the policy in controversy was not formally and physically surrendered into the possession of the defendant prior to the fire. A contract of insurance must be governed and interpreted by the same rules which ordinarily apply to other contracts, and it will be enforced only according to the manifest intention of the parties. It is a self-evident proposition that a contract of insurance may be as readily rescinded, as it was made, by the mutual agreement of the parties or their authorized representatives; and while the surrender of a policy of insurance by the insured and its acceptance by the insurer is usually *prima facie* evidence of cancellation, yet a formal physical surrender is not absolutely necessary to a rescission and cancellation of the contract. The formal surrender and acceptance of the policy is at best a piece of evidence tending to show a cancellation, and if the fact of rescission is established (as we think it was in this case) by the mutual agreement of the parties, the rescission is as complete and effectual as if the policy had been actually indorsed "canceled" and surrendered into the possession of the defendant.

It is claimed that the trial court erred in its charge to the jury wherein it was in substance declared that, if the jury found from the evidence that Kenna was directed to cancel any particular policy, he would be bound by the direction; but, on the other hand, if the jury found that Kenna was given a general, unqualified order to cancel so much of the insurance ordered as might be necessary to reduce the amount thereof to $25,000, then his designation of the policy or policies to be canceled would be binding upon the plaintiff; and if the minds of the parties had met upon the subject of cancellation, it was not necessary to a valid cancellation of the policy in suit that it be physically delivered and surrendered to the defendant prior to the fire.

The charge of the court upon these subjects is in harmony with our previously expressed understanding of the law of the case, and as it accords with our conception of the evidence, we must hold that in these particulars the charge of the court was free from error.

As heretofore indicated, we are of the opinion that, upon the whole case, the evidence was sufficient to justify the finding of the jury, which must be implied from their verdict, that the plaintiff had empowered and authorized Kenna to effect and cancel her insurance; and this being so, the trial court did not err in charging the jury that the plaintiff would be bound by anything done by Kenna within the scope of his authority as the broker and agent of plaintiff.

Complaint is made of the refusal of the trial court to give, upon behalf of the plaintiff, a requested instruction which in effect required a verdict for the plaintiff if the jury found that, at the time the order to reduce was given, the plaintiff did not know that Kenna had already executed the order first given. The record does not disclose any dispute upon the question of Stevenson's knowledge as to whether or not the original order had been executed before the modified order was given. It seems to be conceded that Stevenson had no information upon the subject and that he did not seek to be informed thereon. The order to reduce was absolute and unqualified, and as it was to be executed in any event, we are unable to perceive how, as a matter of law, the knowledge or lack of knowledge on Stevenson's part, in the particular stated in the requested instruction, could alter the situation, or modify the duties and responsibilities of the parties to the transaction.

The trial court did not err in admitting testimony as to the conversation had prior to the fire between Kenna and Henry, the defendant's manager, with reference to the cancellation of the policy in controversy. This testimony tended strongly to show that the policy had been actually canceled before the fire, and it was properly admitted upon the theory, amply sustained by the evidence, that Kenna was the agent of plaintiff for the purpose of placing and, if necessary, canceling a part of the insurance in question.

The judgment appealed from is affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1911.