NEW ZEALAND INS. CO., Limited, v. LARSON LUMBER CO. et al. YORKSHIRE INS. CO., Limited, v. SAME. LARSON LUMBER CO. v. BOSTON INS. CO.

(Circuit Court of Appeals, Seventh Circuit. May 26, 1926.)

Nos. 3707–3709.

1. Insurance ⊙⟝229(1).

Provision in Wisconsin fire insurance policy permitting cancellation by insurer only on five days' written notice is for benefit of insured, and may be waived by him.

2. Insurance ⊙⟝98.

Fire insurance agent has authority to act in certain field for insured, as well as insurer.

3. Insurance ⊙⟝668(2).

Under evidence as to authority of agent to cancel existing fire insurance and substitute other insurance, substitution shortly before loss, without notice, held to present question for jury.

In Error to the District Court of the United States for the Western District of Wisconsin.

Actions by the Larson Lumber Company against the New Zealand Insurance Company, Limited, against the Yorkshire Insurance Company, Limited, and against the Boston Insurance Company. Judgment for plaintiff against the two first-named defendants, and in favor of the last-named defendant, and the two first-named defendants and plaintiff separately bring error. Affirmed.

Hendrik Folonie, of Chicago, Ill., for New Zealand Ins. Co. and Yorkshire Ins. Co.

C. B. Bird, of Wausau, Wis., for Boston Ins. Co.

A. J. O'Melia, of Rhinelander, Wis., for Larson Lumber Co.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. On November 8, 1923, fire destroyed a large quantity of lumber in northern Wisconsin for the Larson Lumber Company. It was covered by insurance that had been written by numerous companies through a common agency. Plaintiff sought to fasten on each one of the three above-named insurance companies a liability for its proportionate share of the loss.

Defendants have not questioned plaintiff's right to recover. The only issue is between the Boston Insurance Company on the one side, and the New Zealand Insurance Company and Yorkshire Insurance Company on the other side, over an alleged substitution of insurance policies on November 3, 1923. The Boston Insurance Company asserts its liability ceased November 3, because its insurance was canceled on that date, and new insurance written in the New Zealand and Yorkshire Companies took effect. The last-named companies deny such cancellation and that new insurance was written before the loss. It was stipulated upon the trial that the Boston Insurance Company had carried insurance on this risk up to November 3, 1923. Whether this insurance was canceled and new insurance written in the other companies was therefore the narrow issue of fact that was submitted to the jury. A verdict for the Boston Insurance Company was returned.

It appeared from the testimony that B. was the president of a local insurance agency representing many different fire insurance companies. He was instructed by W., the

purchaser of the lumber cut by the Larson Company, and the representative of the Larson Company, to write insurance upon certain lumber and logs, making it payable to a certain bank as its interest should appear. The amount of cut lumber varied during the sawing season, and as a consequence the amount of the insurance was occasionally changed. Increases or decreases were ordered by W., and the Larson Lumber Company kept itself informed as to such changes. When insurance was canceled, the unearned premium was credited to the account of the insured. When new insurance was written, the premium was charged to the account of the insured, and statements were sent out by the insurance agency.

B.'s authority was in part traceable to certain verbal instructions received from W., the representative of the insured. He said he was instructed "to keep it insured in some company up to the amount, and, if companies get off the risk, we would place it in others." W. testified: "All he said was he would keep the amount of insurance up to what I told him."

Directing the witness B.'s attention specifically to the subject of cancellations, he said: "Nothing was said at that time about cancellations, or the manner in which we were to handle that. This was left to me."

B. also testified: "In the writing of these policies we do not notify the assured, when we write the policies, that they are covered; we just wait for our own convenience. * * * I mean just what I said about holding the policy when we write it; we hold it to see if the company will accept it. If they do not accept, the company would write or wire cancellation, wiring or writing us as agents that they were relieved under that number, and when they would do that, we would cancel it as soon as we got the wire, just exactly the same way in which we canceled the Boston. If we received it in a very few days after the writing of the policy, there would be no charge under that policy. It would be what we call a flat cancellation."

When substituted policies were written B. sent them to W., advising him that they were in place of another (designating it) "which we are canceling at the request of the company," or words to like effect. On November 1st the Boston Insurance Company ordered B. to cancel its $10,000 policy on this risk. B. in turn instructed his clerk so to do, and to place the insurance with the New Zealand and Yorkshire Companies—$5,000 in each company. Policies were accordingly written in these two companies, and placed in the safe. The insured was given credit on B.'s books for the unearned premium paid on the policy of the Boston Company, and charged with the premium on the other two policies. B. did not mail or deliver the new policies to the insured, nor did he get the canceled policy of the Boston Company before the fire. He did not, due to the oversight of the clerk, send a daily report to either the New Zealand or the Yorkshire Companies showing the execution of the new policies. Likewise he did not notify the insured of what he had done.

We agree with counsel for plaintiff in error that the New Zealand and Yorkshire policies were not in force unless the policy in the Boston Insurance Company was canceled. Whether there was a cancellation of the Boston Company's policy depends upon the express and implied authority of B., construed in the light of the Wisconsin standard fire insurance policy, which contained a clause permitting a cancellation by the insurer only on five days' written notice.

[1] This provision of the Wisconsin standard fire insurance policy, however, can have no bearing on the present case, because such provision is solely for the benefit of the insured, and can be waived by him. In other words, although the insurance company cannot cancel against the insured's wishes short of five days, the contract may be terminated or canceled by mutual consent at any time. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131. And this result may be accomplished through the action of an agent or agents of the insured and the insurer as well as by the parties themselves.

[2] The question, therefore, remains one of agency—the authority of B. to bind both the insured and the insurer by agreement, and to terminate immediately, existing insurance. A fire insurance agent's authority to act in certain fields for the insured as well as the insurer is so well settled that authorities seem superfluous. It has been so held in Wisconsin. Davis Lumber Co. v. Hartford Fire Ins. Co., supra; Wicks Bros. v. Scottish Union & National Ins. Co., 107 Wis. 606, 83 N. W. 781. In the Davis Case the court said, speaking of the agent's authority to cancel: "The broker may be so clothed with authority as to have full power to act for the insured in canceling, as well as procuring, policies."

[3] B.'s authority to cancel existing insurance may be found in the language above

quoted, as well as in his actions during the 1923 season. That he construed his agency to include the authority to cancel existing insurance, in case he replaced such insurance for like amount in another company, is abundantly established by the testimony. That both the Larson Lumber Company and W. acquiesced in such construction of B.'s authority is likewise clear. From this action, as well as from the language above quoted, the court was justified in concluding that a jury question was presented.

The judgment is affirmed.