[Civ. No. 8885. First Appellate District, Division Two.—May 26, 1933.]

D. STRAUSS et al., Appellants, v. DUBUQUE FIRE & MARINE INSURANCE COMPANY OF DUBUQUE, IOWA (a Corporation), et al., Respondents.

Leon E. Prescott and H. B. M. Miller for Appellants.

Redman, Alexander & Bacon and A. B. Weiler for Respondents.

STURTEVANT, J.—The plaintiff sued to recover on a fire insurance policy. The trial court made findings in favor of the defendants and from the judgment entered thereon the plaintiffs have appealed. In some instances the court found certain paragraphs of the complaint to be true. Incorporating such paragraphs, in effect the findings were as follows:

"I.

"That at all the times herein referred to the said Allied Box & Excelsior Company was and now is a corporation duly organized and existing under and by virtue of the laws of the State of California, with a capital stock of $25,000.00 divided into 25,000 shares of the par value of $1.00 per share.

"That at the time of the formation of said corporation there was issued by it a total of 16,508 shares of said 25,000 shares for and in consideration of the sale, assignment and transfer to it by the plaintiff, D. Strauss, of the good will and all the property and assets of the business in which he then was and for a long time prior thereto had been engaged of buying, selling, manufacturing and generally dealing in and with wood and paper boxes and excelsior.

"That of said 16,508 shares of the capital stock of said corporation so issued and delivered by it as aforesaid, 16,506 shares thereof were, at the special instance and request of the said plaintiff, D. Strauss, issued and delivered to him, one share thereof, at his special instance and request, delivered to the plaintiff Leon Strauss, and one share thereof, at his special instance and request issued and delivered to the said plaintiff W. B. Jefferson.

"That the one share of the capital stock so issued and delivered to the plaintiff Leon Strauss as aforesaid, and the one share of said capital stock so issued and delivered to the plaintiff W. B. Jefferson, as aforesaid, were issued and delivered to them respectively to enable the said plaintiff D. Strauss to complete the organization of said corporation, and to enable the said Leon Strauss and the said W. B. Jefferson to qualify as directors of said corporation, and for no other purpose.

"That at all times herein stated the defendant, Dubuque Fire & Marine Insurance Company, was and now is a corporation organized and existing under and by virtue of the laws of the State of Iowa for the purpose of transacting a general insurance business, and at all of said times was and now is entitled to transact and transacting a general insurance business in the State of California by virtue of the laws of said state, with its principal place of business on the Pacific Coast in the City and County of San Francisco, State of California.

"That at all of said times the defendant, National Reserve Insurance Company of Illinois, was and now is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois for the purpose of transacting a general insurance business, and at all of said times was and now is entitled to transact and transacting a general insurance business in the State of California, under and by virtue of the laws of said state, with its principal place of business on the Pacific Coast in the City and County of San Francisco, State of California.

"That at all the times herein referred to the defendants above named in the transaction of their said business and with authority of the Insurance Commission of the State of California, have issued and are still continuing to issue policies of fire insurance under and by the name of The Reserve Underwriters, each of which policies is known and designated as 'The Reserve Underwriters Fire Insurance Policy Issued by Dubuque Fire & Marine Insurance Company, Dubuque, Iowa, and National Reserve Insurance Company of Illinois'.

## "II.

"That upon the 21st day of February, 1931, the defendants made, executed and delivered that certain policy of

fire insurance, a true and correct copy of which is attached to the amended complaint and marked 'Exhibit A', wherein and whereby said defendants did insure 'D. Strauss and Leon Strauss and W. B. Jefferson, a corporation', for the term of one year from the 21st day of February, 1931, at noon, to the 21st day of February, 1932, at noon, against all loss or damage by fire in an amount not exceeding $3000.00 on the property described in said policy of insurance; and subject to the terms, conditions and provisions of said policy.

"That there never was any corporation by the name of 'D. Strauss and Leon Strauss and W. B. Jefferson', but there was and still is a corporation by the name of 'Allied Box & Excelsior Company', and said Allied Box & Excelsior Company was the owner of the property insured in the aforesaid policy of insurance, and said D. Strauss was the sole stockholder in said corporation of Allied Box & Excelsior Company, excepting qualifying shares held by the directors.

## "III.

"That the plaintiffs herein did not, nor did either of them at the time of the application hereinbefore referred to, or at the time of the issuance and delivery of the policy of insurance involved in this action, or at any time whatever, or at all, make any statements or representations of any kind or character to the defendants herein, or to either of them, as to the nature or character or extent of their title or interest in and to the property in said policy described, or to the title or interest of any of them therein or thereto, or in or to any part thereof; and neither plaintiffs nor their agents, nor any other person informed the defendants or either of them of the fact that the Allied Box & Excelsior Company was the owner of the insured property, and defendants supposed that said property was owned by D. Strauss and Leon Strauss and W. B. Jefferson, a corporation, and assumed that there was such corporation. That if defendants had known that the Allied Box & Excelsior Company was the owner of said insured property said defendants would have declined to accept the insurance, as excelsior was on their prohibited list.

## "IV.

"That at the time of the application for the aforesaid policy, and at the time of the issuance and delivery of said policy of insurance by the defendants, the defendants did not know, and by the exercise of ordinary care and caution could not have determined from block books in their possession that the business conducted and carried on at the place where the property was located, namely, at 650 Brannan Street, San Francisco, was then conducted and carried on under and by the name of Allied Box & Excelsior Company; and the words, 'a corporation', following the names of the plaintiffs in said policy, were not intended to mean, and do not mean, and were not understood by the defendants or either of them to mean, the 'Allied Box & Excelsior Company, a corporation'.

## "V.

"That the premium charge on said policy of insurance was never paid, but after the issuance of the policy of insurance, and subsequent to the fire referred to in the amended complaint, and prior to the commencement of this action, the plaintiffs sent to the defendants a certified check of the said Allied Box & Excelsior Company for the amount of the premium, but said defendants have never cashed the check, but have held and still hold said check for the benefit of whom it may concern, and for the benefit of whoever may be entitled to said check or its proceeds.

## "VI.

"That thereafter on the 8th day of April, 1931, a fire occurred which injured and damaged the property in said policy described while located on the premises 650 Brannan Street, San Francisco, California, to the extent of $8850.75; and the total insurance covering the property described in defendants' policy which at the time of the fire was in force and effect was as follows: Policy of Merchants Assurance Corporation for the sum of $3000; policy of National Union Insurance Company for the sum of $1745.88; policy of St. Paul Fire and Marine Insurance Company for the sum of $1500.

## "VII.

"That immediately after the fire aforesaid occurred the plaintiffs above named gave notice of said fire to the defendants above named, and thereafter, and on the 8th day

of May, 1931, and within the time required by and in accordance with the terms and conditions of the policy of insurance so issued and delivered to plaintiffs by the defendants as aforesaid, furnished to said defendants a preliminary proof of loss duly verified, accompanied by an itemized statement showing the amount and character of each article of property injured and damaged by said fire and covered by said policy, and the value thereof at the time of said fire, and in said preliminary proof of loss made claim against the said defendants for the sum of $2,612.23, as the amount of liability of said defendants to plaintiffs under said policy by reason of said fire; except that in the proof of loss it was stated by the plaintiffs that the defendant companies insured 'D. Strauss and Leon Strauss and W. B. Jefferson, a corporation,' and that the insured in said policy was the sole owner of said property and that no other person was interested therein.

"It is not a fact that at the time of the fire the policy of insurance issued by said defendants was in full force and effect, or in full or any force or effect, the fact being that prior to the fire said policy was canceled, and a policy in the Merchants Fire Assurance Corporation for the sum of $3,000 substituted in lieu thereof on the 1st day of April, 1931.

## "VIII.

"That the amount of the alleged loss as claimed by the plaintiffs in their amendment to the proof of loss was the sum of $8,850.75.

## "IX.

"That the plaintiffs did not prior to the commencement of this action perform all matters and things required to be done and performed by them under and by the terms of the policy of insurance involved in this action, the facts being as heretofore and hereinafter found.

## "X.

"That more than 90 days elapsed between the time when the plaintiffs furnished their preliminary proof of loss and amendments thereto and the date of the commencement of this action, and the amount claimed by plaintiffs from defendants, to-wit: $2,612.23, has not been paid, but neither that sum, nor any sum, is due or owing or unpaid or

290

payable from the defendants to the plaintiffs, or any of
them.

## "XI.

"That the policy of insurance issued by the defendants
provided that it should become void if the insured con-
cealed or misrepresented any material fact or circumstance
concerning the insurance or the subject thereof; and the
policy also provided that it would become void in case of
any fraud or false swearing by the insured touching any
matter relating to the insurance or the subject thereof,
whether before or after a loss. And the court finds that
pursuant to the provisions of the policy it became void when
subsequent to the fire plaintiff D. Strauss gave false testi-
mony under oath on examination by a representative of
the defendants, which said false testimony was given prior
to the commencement of this action.

## "XII.

"And the court finds that on the 1st day of April, 1931,
and prior to the occurrence of the fire referred to in the
amended complaint, the policy issued by defendants was
canceled, and at the time of the fire said policy was not
in force or effect. And the court finds that prior to the
time of the fire another insurance policy, to-wit: a policy
of the Merchants Fire Assurance Corporation of New York,
in the amount of $3,000, and on the same property de-
scribed in the policy issued by defendants, was substituted
for and accepted by the plaintiffs in lieu of the policy
which had theretofore been issued by the defendants; and
the policy of the defendants was canceled. And plaintiffs
herein filed proofs of loss against said Merchants Fire Assur-
ance Corporation of New York, and collected from said
Assurance Corporation under the substituted policy. The
court further finds that the policy of the defendants re-
ferred to in the amended complaint was canceled by consent
of the parties prior to the time of the fire.

## "XIII.

"The court finds that prior to the time of said fire the
plaintiffs in the above entitled action were doing business
under a fictitious name, and did not comply with the laws
of the state of California in regard thereto, and neither
filed the requisite certificate, nor made the publication re-
quired by the laws of California, and have never done so.

## "XIV.

"The court finds that at the time the policy was issued the plaintiffs concealed from the defendants a material fact, namely, that they were doing business under the name of Allied Box & Excelsior Company, a corporation, and that they dealt in and carried excelsior on said premises.

## "XV.

"It was provided in the policy issued by the defendants that it would be void if the interest of the assured was other than unconditional and sole ownership. The assured in said policy was 'D. Strauss and Leon Strauss and W. B. Jefferson, a corporation', and the court finds that the assured named in said policy did not have an interest of unconditional or sole or any ownership in said property."

The plaintiffs claim that many different findings are not sustained by the evidence. They assert that the defendants herein intended to and did insure said plaintiffs by the policy of insurance which is the subject of this action against loss or damage by fire to the property in said policy described in a sum not exceeding $3,000 for the period of one year from and after the twenty-first day of February, 1932. As to what the defendants intended was not made an issue and neither is there a finding. As to the identity of owner intended to be insured the policy named "D. Strauss and L. Strauss and W. B. Jefferson, a corporation". There was no allegation of mistake and there is no finding of such an issue.

The plaintiffs assert that at the time of the issuance and delivery to them of the policy which is the subject of this action, and at the time of the fire, they were the unconditional and sole owners of the property in said policy described within the meaning of the terms thereof. The trial court found that Allied Box & Excelsior Company was the sole owner. On that finding there was not even a conflict in the evidence. The assertion made by the plaintiffs is their conclusion of law based on the ownership of the capital stock. In making the above assertion the plaintiffs claim the right to ignore the corporate entity. However, there was no evidence and there is no finding supporting the plaintiffs in this position. It is settled law in this state that the corporate entity may be disregarded when to do so is necessary to avoid fraud or injustice. (*Minifie* v.

*Rowley,* 187 Cal. 481, 487 [202 Pac. 673]; 6A Cal. Jur. 75–81.) No such record is before us. It follows that the plaintiffs were not the owners of the property described in the policy.

■ The plaintiffs assert that they were not guilty of any concealment of any kind or character in procuring the policy here involved or otherwise. The most that can be said is that there is a possible conflict in the evidence. The correct name of the owner, "Allied Box & Excelsior Company", would have shown that at 650 Brannan Street the business conducted had something to do with excelsior. The trial court found that the defendants would not have entertained an application to insure excelsior. When the plaintiffs applied for insurance in the name of "D. Strauss and Leon Strauss and W. B. Jefferson, a corporation" they falsely named a corporation that in fact does not exist and they suppressed the true name which, if it had been stated, would have resulted in their application being refused. Said act was at least some evidence of concealment. It is concealment to neglect to communicate that which a party knows and ought to communicate. One certainly knows his own name. These plaintiffs did not state their name. The name they did state was both a concealment and a material misrepresentation. (*McCormick* v. *Springfield F. & M. I. Co.,* 66 Cal. 361 [5 Pac. 617].)

■ Again, it is asserted that the premium on the policy was fully paid by plaintiffs within the time allowed to them for the payment thereof by the defendants. A more exact expression would be that the plaintiffs tendered the premium. After the fire occurred they called on the defendants and gave notice of the loss. They were at once told that they had no insurance in the defendant companies. Thereupon they left and consulted counsel who caused a certified check to be forwarded. That check was never cashed. The trial court found that defendants hold it for whom it may concern.

■ It is next asserted that the policy issued by the defendants was never canceled. If the plaintiffs mean that the policy was never indorsed in ink "canceled" then their contention conforms to the facts. However, an insurance policy is in effect canceled when another policy is substituted for it. (*Stevenson* v. *Sun Ins. Office,* 17 Cal. App.

282, 288 [119 Pac. 529]; *New Zealand Ins. Co.* v. *Larson Lumber Co.,* 13 Fed. (2d) 374.) That in the instant case there was a substitution is clearly supported by the evidence. It may be claimed that there was a conflict in the evidence but that conflict was addressed to the trier of the facts.

It is again asserted that the policy was in full force and effect at the time of the fire. As we have just seen in discussing the previous point that the finding of substitution must stand, it follows that the policy was not in force or effect at the time of the fire.

In their next point the plaintiffs assert that their loss exceeded the total of all insurance they had covering the property described in the policy. There was some evidence that the total loss was $11,989.31; however, the plaintiffs tendered the evidence that that figure was incorrect and that the total loss was $8,850.75, and the latter sum was adopted by the trial court in making its findings. Not including the policy sued on the insurance collected was $6,245.80. From those figures it appears that the loss exceeded the insurance $2,604.95. Confining ourselves to those figures the statement made by the plaintiffs is correct. If by their point they mean to include the policy in suit, then their statement is neither sustained by the findings nor by the evidence.

It is next asserted that the plaintiffs have done and performed all things by them to be done and performed. The trial court made a finding to the contrary. Under the terms of the policy the plaintiffs in the event of a loss were bound to return proofs of loss that were true and correct. They did not do so. Their proofs of loss were made in the name of D. Strauss and Leon Strauss and W. B. Jefferson, a corporation. Each of those individuals executed an affidavit in the name of such claimant. Among other things the affidavit recited "Interest of Insured sole owner". As shown above that was a false statement and not a true statement. Pursuant to a provision contained in the policy D. Strauss was called and examined by the company. He appeared accompanied by his attorney and testified under oath. As to several matters the defendants claim he testified falsely. The plaintiffs claim that he made innocent mistakes. The trial court made a finding against the plaintiffs. That finding may not be disturbed.

In this same connection the plaintiffs claim that they were not guilty of any false swearing within the meaning of their policy. As shown above that argument might properly be addressed to the trial court but under the facts it has no standing in a court of review.

Again, it is asserted that the plaintiffs did not do business under and by a fictitious name, but did do business solely and only under the name of Allied Box & Excelsior Company. If the latter portion of that contention is sound then the plaintiffs fraudulently imposed on the defendants in taking out insurance in the name of a corporation that did not exist and failing to give the correct name of the owner. If by their contention it is claimed that the plaintiffs did not violate Civil Code, section 2466, the claim is immaterial, because as we have shown above, the findings that were fully supported by the evidence sustain the judgment and the finding under attack is immaterial.

The plaintiffs call attention to the mailing of the check, its retention by the defendants, and the examination of the plaintiffs on the request of the defendants. Thereupon they assert that the defendants are estopped from making any defense. Regarding the examination of the plaintiffs under oath that subject is covered by the language of the policy, which distinctly provides that the procedure mentioned will not constitute a waiver. Regarding the transmission and retention of the check, it will be remembered that those incidents occurred after the fire. They did not create a waiver nor an estoppel. (*McCormick* v. *Orient Ins. Co.*, 86 Cal. 260, 262 [24 Pac. 1003]; *Goorberg* v. *Western Assur. Co.*, 150 Cal. 510, 518 [89 Pac. 130, 119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L. R. A. (N. S.) 876].)

When D. Strauss was on the stand as a witness the defendants asked, "Q. And that corporation owned the property that was destroyed in the fire, didn't it? Mr. Miller: I object to that as calling for the conclusion of the witness. The Court: I am going to allow the question. A. Yes." The ruling was clearly correct. (*Nolan* v. *Nolan*, 155 Cal. 476, 480 [101 Pac. 520, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056]; *Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712, 718 [103 Pac. 190].)

The plaintiffs called a witness and sought to show by the witness that before the fire a representative of the plaintiff corporation sought to obtain more insurance. To that evidence objections were sustained and the plaintiffs complain of error. It is claimed the testimony would rebut the contention of the defendants that the Merchants Policy was a substitute for the policy in suit. It is sufficient to state that we see no prejudicial error in the ruling.

The plaintiffs claim that certain issues were made by the pleadings but on which no finding was made. We have examined each one with care. If a finding in favor of the plaintiffs had been made on each of such issues, such findings would be immaterial. It follows that it was not error to fail to make findings thereon. (20 Cal. Jur. 127.)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.