**MILBANK MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Appellant.**

**No. 12893.**

Supreme Court of South Dakota.

Submitted on Briefs April 17, 1980.

Decided July 1, 1980.

Donald A. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellee.

Charles H. Whiting of Whiting & Hagg, Rapid City, for defendant and appellant.

FOSHEIM, Justice.

This is an action initiated by plaintiff Milbank Mutual Insurance Company (Milbank) against State Farm Fire and Casualty Company (State Farm) seeking declaratory relief. The case was tried to the court on stipulated facts and depositions. From a judgment entered in favor of Milbank, State Farm appeals. We reverse.

Warren D. and Barbara Glick purchased a home in Sundance, Wyoming in June of 1965. The purchase was financed with a Veterans Administration (VA) loan, and the Glicks obtained $13,000 in fire and extended insurance coverage on the house and its contents with Milbank. Amounts equal to the premium payments were included in the VA loan payments; the premiums were paid and the policy was renewed from time to time by the VA. The effective date of the last renewal was May 20, 1974, and the expiration date was May 20, 1977. In June

of 1966, the Glicks satisfied the balance of their VA loan obligation, whereupon the Milbank policy was sent to the Glicks by the VA, along with the loan instruments and the abstract. Subsequently, the Glicks obtained a State Farm policy on the same property, insuring the structure against fire with extended coverage of $19,000.

On February 2, 1977, the house was severely damaged by fire. Although State Farm's adjuster determined the amount of the loss to be $13,046, it paid the Glicks only $7,746.11, claiming that the Milbank policy was in effect at the time of the fire and that under the terms of its policy, it was liable only for a pro rata share of the loss. Subsequent to the date of loss, Milbank purported to cancel the policy issued by it and refunded to the Glicks the premium for the period from the effective date of the State Farm policy, August 4, 1976, to the expiration date of the Milbank policy, May 20, 1977. Milbank later paid the Glicks the balance of $5,279.62, taking an assignment from the insureds of any claim they might have against State Farm for its failure to pay the entire amount of the loss. Milbank then brought the present action, seeking a declaration of the rights and obligations flowing from the policies issued by the two insurers. The trial court found that the Glicks intended to replace the Milbank policy with the State Farm coverage, that the Milbank policy was effectively cancelled by that substitution, and that State Farm was liable to Milbank for the pro rata share Milbank paid to the Glicks.

The sole question on appeal (one of first impression for this court) is whether the Glicks' purchase of the State Farm policy operated as an effective cancellation of the Milbank policy. Milbank maintains that the Glicks' purchase of substitute insurance from State Farm, obtained with the intent that it replace the existing Milbank policy and without the intent to obtain additional insurance on the property, effectively cancelled the Milbank policy. State Farm, on the other hand, contends that obtaining such substitute coverage cannot operate to cancel the original coverage in the absence

of any notice from the insured to the original insurer.

Milbank urges that the doctrine of "cancellation by substitution," which finds support in several cases of relatively early origin, be adopted by this court. Milbank relies primarily upon two cases, *Strauss v. Dubuque Fire & Marine Insurance Co.*, 132 Cal.App. 283, 22 P.2d 582 (1933), and *Wells Petroleum Co. v. Fidelity-Phenix Fire Insurance Co.*, 121 F.Supp. 739 (N.D.Ill.1954). In *Strauss*, the defendant insurer issued a fire policy to three directors of a corporation engaged in the production of excelsior, a highly flammable packaging material. The premium was not tendered until subsequent to the date of a loss by fire. In the interim period, however, the plaintiffs had obtained a second policy on the property through a different insurer. In holding that the policy issued by defendant had been cancelled by substitution of the second policy, the Court said:

> It is . . . asserted that the policy issued by the defendants was never canceled. If the plaintiffs mean that the policy was never indorsed in ink "canceled," then their contention conforms to the facts. However, an insurance policy is in effect canceled when another policy is substituted for it. *Stevenson v. Sun Insurance Office*, 17 Cal.App. [280] 282, 288, 119 P. 529, 531; *New Zealand Ins. Co. v. Larson Lumber Co.* (C.C.A.) 13 F.(2d) 374.

132 Cal.App. at 593, 22 P.2d at 586.

Although the *Strauss* court's language appears broad and unequivocal, we note several distinguishing features in that case which clearly gave impetus to the Court's seeming reliance upon the substitution doctrine. Not only were the plaintiffs doing business under a fictitious name, contrary to state law, but they had also concealed from the defendant a material fact: the insured premises carried excelsior, an item that was included on the insurer's list of prohibited risks. In addition, the policy provided that it would be void if the interest of the insured in the property was other than unconditional sole ownership. The

Court found that plaintiffs did not have such an interest in the property. Thus, the *Strauss* decision seemed to rest upon numerous factors independent of the existence of a second policy. No comparable factors are evident in the present case.

The two cases cited in *Strauss* as authority, *Stevenson v. Sun Insurance Office*, 17 Cal.App. 280, 282, 119 P. 529 (1911), and *New Zealand Insurance Co. v. Larson Lumber Co.*, 13 F.2d 374 (7th Cir. 1926), provide only limited support for the substitution doctrine. Both cases dealt with the question of a broker's authority to effect a cancellation. That these cases and their progeny are not to be read as *carte blanche* authority for the doctrine of cancellation by substitution in the absence of mutual agreement is best exemplified by this statement in *Stevenson*:

> The formal surrender and acceptance of the policy is at best a piece of evidence tending to show a cancellation, and, if the fact of rescission is established . . . *by the mutual agreement of the parties*, the rescission is as complete and effectual as if the policy had been actually indorsed "canceled," and surrendered into the possession of the . . . [insurer].

17 Cal.App. at 288, 119 P. at 532 (emphasis supplied.)

▇ Where there is no mutual agreement establishing the fact of rescission or cancellation, surrender and acceptance of the policy itself will be required, at the very least, to evidence a cancellation by substitution. In the present case, there was no notice from the Glicks to Milbank nor was there a surrender of the policy itself.

We find *Wells Petroleum Co. v. Fidelity-Phenix Fire Insurance Co.*, supra, equally distinguishable. In *Wells*, the plaintiff had obtained coverage via directions to its insurance broker who obtained various policies through his general agent-employer. Due to a dispute with his employer, he left that office and joined the employ of another general agent. He then informed his previous employer that he had replaced all the policies written through that agent and that the cancelled policies would be for-

warded for refund on a pro rata basis. The former general agent insisted that a short rate, as opposed to pro rata, basis of premium return would apply. This dispute continued beyond the date of a subsequent loss by fire. When it became evident that the dispute could not be settled, the broker resolved to return the policies direct to the insurers, again seeking a pro rata premium return. Whether the policies were ever actually surrendered is not significant; rather, the importance lies in the fact that there was an unequivocal notice of cancellation from the insured through its broker (who was imbued with authority to manage all insurance on the subject property) both prior and subsequent to the date of the loss. Conversely, in the present case it is undisputed that no notice of cancellation was given at any point by the Glicks or any agent to their original insurer, Milbank.

While certain aspects of the *Wells* case lend credence to Milbank's position, we think it is significant that the Court quoted at length from Vol. 3 of Richards On Insurance §§ 531, 532 (5th Ed.), in part as follows:

> A contract of insurance presupposes mutual confidence and satisfaction. Therefore, it is a wise provision which empowers either party to terminate or cancel the policy at his option, at any time, on just terms, without the consent of the other . . . No action on the part of the insured is necessary to effect a cancellation other than the mere giving of notice of his wish to cancel. . . .
>
> The insured can cancel forthwith at any time by request . . . *The sole requirement to effect a cancellation by the insured is a definite and unconditional request for cancellation actually communicated* to the company.

121 F.Supp. at 743 (emphasis supplied). It is of further interest that many of the cases cited in *Wells* either dealt with ratification and election by the insured following the broker's substitution of original insurance or expressed concern with the possibility of double recovery by the insured. Such concerns simply do not exist in the present case.

The modern view in cases involving cancellation completely rejects the position that the mere acquisition of new insurance on property already insured in and of itself acts as a cancellation of the prior policy. *See*: Annot. 3 A.L.R.3d 1072 (1965). In *Glens Falls Insurance Co. v. Founders' Insurance Co.*, 209 Cal.App.2d 157, 25 Cal. Rptr. 753, 3 A.L.R.3d 1058 (1962), the insured had four policies with Glens Falls covering an apartment house. She also carried a Glens Falls policy on another piece of property under which policy a claim was presented. After being informed that Glens Falls would not honor the claim, she told the adjuster that ". . . I shall call up and cancel all of these policies as of now." She then called the Glens Falls office and in the presence of the adjuster stated "to someone on the telephone" that "[a]s of today I shall cancel all these policies if you will not take care of this claim." After several months passed and Glens Falls had failed to cover her claim, the insured enlisted a broker and told him to cancel every policy with the insurer and obtain substitute coverage if Glens Falls would not cover her claim. The broker contacted Glens Falls, but did not inform them that he was authorized to cancel the policies. He stated only that the insured would likely cancel at some future date and that with respect to cancellation, Glens Falls would have to speak with the original broker of record. The new broker subsequently spoke with the original broker and informed him that he would do all in his power to see that the Glens Falls policies were left in force, but the original broker expressed disinterest in keeping the insured as a client. That day, the broker accordingly placed a "binder" for coverage on Founders' Insurance Co. in an amount equal to the Glens Falls coverage.

The trial court held that a cancellation of the Glens Falls policies had been effected. In reversing, the Court of Appeal held that even though the new insurance was intended to replace the Glens Falls policies and there was no intent to acquire additional insurance, there could be no cancellation

lacking *agreement or unequivocal notice* of present intention to cancel by the insured.

The approach to cancellation by substitution found in *Glens Falls* has been followed by an increasing number of courts in various jurisdictions. In *Lee v. Ohio Casualty Insurance Co.*, 58 Ill.App.3d 1, 5, 15 Ill.Dec. 555, 559, 373 N.E.2d 1027, 1031 (1978), the Court stated:

> We agree with the overwhelming weight of modern authority favoring the rule that a loss should be divided on a *pro-rata* basis where there is overlapping coverage and where the parties have not agreed to the contrary. We, therefore, decline to enforce the purported doctrine of automatic cancellation by replacement and substitution . . .

In *Franklin v. Carpenter*, 309 Minn. 419, 422, 244 N.W.2d 492, 495 (1976), the Supreme Court of Minnesota said:

> We have followed the better rule that cancellation is not effective until actually communicated [citation omitted]. The intervening purchase of another policy does not effect immediate cancellation of an earlier policy absent notice to that insurer.

A close scrutiny of older cases such as *Strauss, Wells, Stevenson*, and *New Zealand Insurance Co.* (all supra), together with an examination of the modern cases, leads to the conclusion, as stated by the Supreme Court of Missouri, that:

> [T]he doctrine of cancellation by substitution . . . is part of the doctrine of cancellation by mutual consent; . . . in order for cancellation to take place by substitution of one policy for another, it must be done by mutual consent.

*MFA Mutual Insurance Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 801 (Mo.1964). *See: Tyner v. Cherokee Insurance Co.*, 262 S.C. 462, 205 S.E.2d 380 (1974); *Dill v. Lumbermen's Mutual Insurance Co.*, 213 S.C. 593, 50 S.E.2d 923 (1948).

Appellee Milbank nonetheless contends that no sound policy reasons support the requirement of mutual agreement or consent while, on the other hand, the rule it advocates prevents the insured from paying a double premium for what, in effect, is single coverage. We find this argument particularly unappealing where (as in *Glens Falls*) the original insurer's conduct, in not tendering a pro rata or short rate premium refund until subsequent to the date of loss, evinces a belief that its policies were in effect. On the contrary, we view policy considerations as militating in favor of the doctrine of cancellation by mutual agreement, as does the Court of Appeals of Georgia:

> The substitution rule appears to have no logical basis within the law of contracts. On a theoretical level, the rule is inconsistent with the generally accepted principle that contracts can only be terminated by agreement of the parties, by the terms of the contract itself, or by operation of law. As a matter of public policy, the substitution rule fails to advance any purpose which might support its adoption . . . [O]n a practical basis, the rule tends to increase uncertainty as to the very existence of the contract by allowing cancellation to be effected by the subjective intent of the insured and without notice to the insurer.

*Ector v. American Liberty Insurance Co.*, 138 Ga.App. 519, 521, 226 S.E.2d 788, 790 (1976).

We find the modern approach sound and accordingly hold that, except for the remedial right of rescission afforded one of the parties to a contract in instances of fraud, deceit, mistake and the like, an insurance contract can only be cancelled pursuant to its terms or by mutual consent or agreement accompanied by unequivocal notice of cancellation from the insured to the insurer. In the present case, there was no claim of fraud or mistake, and although the policy provided for unilateral cancellation by the insured, it expressly stated that such cancellation must be made "at the request of the insured," and it is uncontroverted that no such request was made by the Glicks. Further, although the Glicks clearly intended to replace the Milbank policy with the State Farm policy and did not intend to obtain additional insurance on the

property, it is uncontroverted that there was an absolute lack of notice from them to Milbank concerning cancellation. Cf. *Glens Falls*, supra.

Accordingly, we conclude that State Farm is not liable to Milbank for the pro rata share of the loss paid by Milbank to the Glicks.

The judgment is reversed.

All the Justices concur.