[L. A. No. 5732. In Bank.—December 24, 1918.]

EMPLOYERS' LIABILITY ASSURANCE CORPORA-
TION, LTD., OF LONDON, ENGLAND (a Corpora-
tion), Petitioner, v. INDUSTRIAL ACCIDENT COM-
MISSION OF THE STATE OF CALIFORNIA et al.,
Respondents.

[L. A. No. 5739. In Bank.—December 24, 1918.]

AETNA LIFE INSURANCE COMPANY (a Corporation),
Petitioner, v. INDUSTRIAL ACCIDENT COMMIS-
SION OF THE STATE OF CALIFORNIA et al., Re-
spondents.

[L. A. No. 5740. In Bank.—December 24, 1918.]

OCEAN ACCIDENT AND GUARANTEE CORPORA-
TION, LIMITED, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION OF THE STATE OF CALI-
FORNIA et al., Respondents.

WORKMEN'S COMPENSATION LAW — PLACING OF LIABILITY — POLICY OF
LAW.—It is the policy of the workmen's compensation law to place
the liability upon the business, or industry, in which the employee
is engaged, by placing the responsibility for indemnity upon the
employer.

ID.—DEFINITION OF "EMPLOYER" AND "EMPLOYEE."—The constitutional
provisions authorizing the workmen's compensation law of necessity
use the terms "employer" and "employee," and it must follow that
in defining such terms in any statute passed in pursuance thereof no
definition therein contained can enlarge the scope of the constitu-
tional authority.

ID.—GENERAL AND SPECIAL EMPLOYMENT—JURISDICTION OF COMMISSION.
As the law recognizes that an employee may at the same time be
under a general and special employer, it would seem to follow that
the jurisdiction of the commission might well be predicated on either
the general or special employment or both.

ID.—DETERMINATION OF RELATIONSHIP — RESORT TO GENERAL LAW.—In
determining the question as to whether or not the relationship of
employer and employee exists, the general law as well as the terms
of the statute itself must be looked to.

ID.—GENERAL AND SPECIAL EMPLOYER INCLUDED IN DEFINITIONS.—The definitions of "employer" and "employee" in the Workmen's Compensation Act are broad enough to include both the general and the special employer.

ID.—GENERAL AND SPECIAL EMPLOYMENT—DEATH OF EMPLOYEE—JOINT LIABILITY.—Under the Workmen's Compensation Act, a company engaged in the manufacture of cement and a partnership engaged in the business of installing and handling large machinery are jointly liable for the death of an employee while performing services on the premises of the Cement Company and for its benefit under an arrangement entered into between the company and the partnership whereby the partnership furnished men and a foreman, who were to be paid by the partnership with funds furnished by the company, the partnership retaining the power to hire and discharge, and both partnership and company being jointly associated in the carrying on of said work.

ID.—POLICY OF INDEMNITY—CORRECTION FOR MUTUAL MISTAKE.—Where a policy insuring against liability fails because of mutual mistake to express the intent of the parties, it may be corrected, even after the happening of an accident, in the absence of estoppel, and if not done so as to defeat an employee's right to compensation.

ID.—DEATH ARISING OUT OF EMPLOYMENT—EVIDENCE—HEARSAY DECLARATIONS OF DECEASED.—The amendment to the workmen's compensation law, passed in 1915 (Stats. 1915, pp. 1079, 1102, sec. 77a), expressly permits hearsay declarations of a deceased employee to prove that death arose out of the employment.

PROCEEDING in Certiorari originally instituted in the Supreme Court to review awards of the Industrial Accident Commission.   Awards annulled.

The facts are stated in the opinion of the court.

Willis I. Morrison and C. La V. Larzelere, for Petitioner Ocean Accident and Guarantee Corporation, Limited.

Haas & Dunnigan, for Petitioner Employers' Liability Assurance Corporation, Limited, of London, England.

Henshaw, Black & Goldberg, for Petitioner Aetna Life Insurance Company.

Christopher M. Bradley, for Respondents.

WILBUR, J.—These proceedings were instituted by the petitioners to review an award against them by the Industrial Accident Commission in favor of Ellen R. Coulter for the death of her husband, J. A. Coulter, alleged to have been caused by an accident of employment on November 16, 1917, at the plant of the Riverside Portland Cement Company, near Riverside, California. The Ocean Accident & Guarantee Corporation, and the Employers' Liability Assurance Corporation were insurance carriers for the Wellman-Lewis Company, a copartnership, while the Aetna Life Insurance Company was the insurance carrier for the Riverside Portland Cement Company. These insurance carriers each claim exemption from liability upon the ground that the partnership or corporation insured by them, respectively, was not the employer of the deceased at the time of his death. They also claim that the award was improper for the reason that the evidence was insufficient to establish the fact that the death of the decedent resulted from injuries arising out of, or received in the course of, his employment. The Ocean Accident & Guarantee Corporation also claims that the award against it is improper for the reason that both parties admitted that, by mutual mistake, the contract covered the accident in question, while the real contract was intended to cover work then being carried on at Hemet only, and that before the hearing the policy had been amended by mutual consent.

The Riverside Portland Cement Company, which will hereafter be referred to as the "Cement Company," was engaged in manufacturing cement. It became necessary to install new machinery and to rearrange the plant. The plans and specifications for such work were made by the engineers of the Cement Company. The Wellman-Lewis Company, hereafter called the "partnership," was engaged in the business of installing and handling large machinery, and had a number of employees experienced in that line of work. The Cement Company desired to secure the services of the partnership. An arrangement was made by which the partnership furnished to the Cement Company its employees, under a foreman also employed by the partnership. The commission, upon sufficient evidence, found the facts to be as follows:

"7. That at the time of said injury, the employee was performing service upon the premises of defendant Riverside Portland Cement Company and for its benefit. That prior to his employment, an arrangement had been entered into between defendant Riverside Portland Cement Company and defendant Wellman-Lewis Company, whereby the latter was to secure and furnish employees, including a foreman, to perform service on the premises of and for the benefit of the Riverside Portland Cement Company, for and in consideration of the payment to said Wellman-Lewis Company of ten per cent of the pay-roll of the employees and foreman thus furnished. That the Riverside Portland Cement Company was to furnish all materials and was to, and did, in fact, give and exercise direction and control over such employees, including said foreman. That no plans and specifications were entered into for doing such work, nor was the nature and extent of the work to be done closely defined to the said Wellman-Lewis Company nor any specific sum of money agreed upon other than as stated above. That account of the time of all such employees was kept by the Riverside Portland Cement Company, such men being required to use the time clock of the said company, and a check for the wages of such employees, plus ten per cent, and less incidental deductions, was sent to Wellman-Lewis Company, who, in turn, paid such employees their wages. That no time was agreed upon for the completion of said work, and that the Riverside Portland Cement Company reserved the right to require the furnishing of such additional employees as it should deem necessary and to cause the discharge of any employees whom it might regard as undesirable. That said agreement between Wellman-Lewis Company and the Riverside Portland Cement Company was substantially an agreement to furnish labor, skilled and experienced only. That the deceased was engaged by the representatives of Wellman-Lewis Company specifically for the work in question and had not been a regular employee of Wellman-Lewis Company prior to his being put to work at the plant of defendant Riverside Portland Cement Company. That the contract of hire by which the employee was engaged was entered into between himself and defendant Wellman-Lewis Company; that the employee looked to and received his pay from Wellman-Lewis Company. That Wellman-Lewis Company had the immediate power of hiring

and discharging him and that the employee was obliged to obey any instructions given him by the foreman furnished by Wellman-Lewis Company. That Wellman-Lewis Company was in fact participating in the performance of the labor upon which the employee was engaged and by virtue of the contract existing between it and defendant Riverside Portland Cement Company. That at the time of said injury, the deceased employee was employed jointly by defendants Wellman-Lewis Company and Riverside Portland Cement Company, who were jointly associated in the carrying on of said work.''

The rules of law by which it is determined whether the position of the partnership was that of an independent contractor, and, if not, whether the Cement Company was a special employer of the deceased, are well settled. In the analysis of the cases bearing upon this subject, and in the discussion of cases analogous in their facts, it should be borne in mind that the reviewing courts are, in most instances, bound by the decision of the triers of fact.

If the partnership in the instant case was an independent contractor, the award against the Cement Company was void. If, however, the relation of the partnership to the deceased was that of general employer, and that of the Cement Company was that of special employer, the responsibilty is more difficult to determine, for the reason that the rules of law concerning the general and the special employer, fixing the status of the special employer, are largely the product of the effort to fix the responsibility of such special employer to third persons, under the doctrine *respondeat superior,* and that under this doctrine the question of extent of the control exercised by the person sought to be held responsible is largely decisive of the question, as obviously it should be. But the question of liability of the employer to the employee under the workmen's compensation law is quite a different matter. Under that law we are fixing a liability which it is the policy of the law to place upon the business, or industry, in which the employee is engaged, by placing the responsibility for indemnity upon the employer. (*Rheinwald* v. *Builders' Brick & Supply Co.,* 168 App. Div. 425, [153 N. Y. Supp. 598]; *Rongo* v. *Waddington,* 87 N. J. L. 395, [94 Atl. 408]; *Kirkpatrick* v. *Industrial Acc. Commission,* 31 Cal. App. 668, [160 Pac. 274].) In the instant case the Employers' Liabil-

ity Assurance Corporation claims "that the physical control and management of the employee is the determining factor as to who was the employer." The Ocean Accident & Guarantee Corporation contends that "the determining factor is, for whom were the individuals performing services; not what particular position they occupied." The Aetna Life Insurance Company claims that the Wellman-Lewis Company was an independent contractor, and therefore responsible for the death of the decedent, but also contends that if the Cement Company be considered as an employer of the decedent it was a special employer only, and that the decedent was in the general employment of the partnership, and that under the law of this state a special employer would not be liable for compensation. If the question were altogether new, it might be said that the person who enters into the contract of employment, express or implied, with the employee, is at all times to be considered the employer, as it is contended the rule should be. Neither our own decisions, nor those of other states, have pursued this simple course. The constitutional provisions authorizing the workmen's compensation law of necessity uses the terms "employer" and "employee" (article XX, section 21), and it must follow that in defining the terms "employer" and "employee" in any statute passed in pursuance thereof no definition therein contained can enlarge the scope of the constitutional authority. So, in determining the question as to whether or not the relationship of employer and employee exists we must look to the general law, as well as to the terms of the statute itself. (See *Carstens* v. *Pillsbury,* 172 Cal. 572, 579, [158 Pac. 218]; *Sturdivant* v. *Pillsbury,* 172 Cal. 581, [158 Pac. 222].) This view is in accord with the statement to that effect in *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 813, 814, [159 Pac. 721, 724] where it is said: "It is suggested that inasmuch as the statute enjoins upon the court liberal construction, we should ignore common law and other definitions, and should, in determining who are and who are not employees, regard only decisions under compensation acts. . . . This court has always endeavored to construe the Workmen's Compensation Act liberally and with a view to carrying out its benevolent purposes, but we cannot see why we should discard the wisdom and learning of the past in our efforts to decide what the legislature intended by the language used." As the law

recognizes that an employee may at the same time be under a general and a special employer, it would seem to follow that the jurisdiction of the commission might well be predicated on either the general or special employment or both. The New York court of appeals took this view in deciding a recent case under the workmen's compensation law of that state. (*De Noyer* v. *Cavanaugh,* 221 N. Y. 273, [116 N. E. 992].) There De Noyer was employed as the driver of a truck by Cavanaugh, who was in the trucking business. The Crown Oil Company, engaged in the business of selling oil and gasoline, made an arrangement with Cavanaugh by which he was to furnish it a horse and driver to be used in connection with a tank wagon owned by the company for distributing oil and gasoline, and De Noyer was employed by Cavanaugh for this purpose. While he was engaged in delivering a can of gasoline from the truck of the Crown Oil Company, the gasoline exploded, causing his death. The award was made against the general employer, Cavanaugh. In reconciling that decision with *Nolan* v. *Cranford Co.,* 219 N. Y. 581, [114 N. E. 1074], the court said: "Even where no property of the general employer is intrusted to the employee to be used in the special employment, the general employer pays the compensation, may direct the employee when to go to work, and may discharge him for refusal to do the work of the special employer. The Industrial Commission, therefore, has full power to make an award against the general employer. It does not follow that by the application of this rule the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. (*Comerford's Case,* 224 Mass. 571, 573, [113 N. E. 460].) Thus at one and the same time they are generally the employees of the general employer and specially the employees of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the workmen's compensation law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries

due to occupational hazards (Workmen's Compensation Law [Consol. Laws, c. 67], sec. 3, subds. 3, 4), and the Industrial Commission may make such an award as the facts in the particular case may justify.'' The above reference to the New York workmen's compensation law (section 3, subdivisions 3, 4) is to the definition of ''employer'' and ''employee'' therein contained, which does not substantially differ from the definition given in our own workmen's compensation law (Stats. 1913, p. 284, c. 176, secs. 13, 14), so far as concerns the matter under consideration here. The definitions of ''employer'' and ''employee'' in our workmen's compensation law (sections 13, 14) are broad enough to include both the general and the special employer, and as such contracts of employment, express and implied, were recognized before the constitutional amendment, we do not see why either or both might not give jurisdiction to the Industrial Accident Commission. While we have heretofore held that an independent contractor is not entitled to compensation under the workmen's compensation law, we find nothing in our decisions which would prevent our following the rule announced by the court of appeals of New York in the case of *De Noyer* v. *Cavanaugh, supra,* and recognizing the fact that in some cases where, at the time of the accident, both the general and special employer exerted some measure of control over the injured person through their respective foremen or employees, both should be held liable. Our attention has been called by the Aetna Life Insurance Company to a case (S. F. No. 8106, *Ayer et al.* v. *Industrial Accident Commission* [no opinion]), where it was held liable by the commission as the insurance carrier of the general employer in a case where the full control of the employee was, at the time of the accident, in the special employer, and where the petition of that company for a review by this court was denied. So far as this case can be regarded as a precedent, it establishes the responsibility of the general employer, even though there was full control by the special employer. Although the commission refused to hold the insurance carrier of the special employer, the refusal to issue a writ of review would not affirm such action. The refusal of this court to review the case tends to establish the point that where there is a general employment, this court will not hold that the commission has exceeded its jurisdiction in giving judgment against such

employer, even if there is a temporary and full control in a special employer. It is not, however, necessary for us to so hold in this case. The supreme judicial court of Massachusetts, however, in a recent case, has reversed an award against the general employer. (*Scribner's Case,* [May 25, 1918], 231 Mass. 132, [120 N. E. 350].) In that case the plaintiff was in the general employment of an ice company, but was injured while handling coal for a coal company, both companies being insured. Compensation was awarded against the ice company. The court reversed the decree. The test is there stated as follows:

" 'In determining whether, in a particular act, he is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result.' (*Shepard* v. *Jacobs,* 204 Mass. 110, 112, [134 Am. St. Rep. 648, 26 L. R. A. (N. S.) 442, 90 N. E. 392, 393].) 'The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired.' (*Coughlan* v. *Cambridge,* 166 Mass. 268, 277, [44 N. E. 218, 219].) Applying these tests, it is clear that Scribner at the time of the injury was an employee of the coal company. He was in that company's yard, engaged in its business and doing its work; and he was under its direction and subject to its orders. Whatever may have been the relation of Scribner to the ice company in the care and management of the horses, at the time of his injury he was engaged in work over which *that company had no control.* (Italics ours.) The business was that of the coal company and under its direction. The transaction between the two companies amounted only to a loan of the ice company's servant to the coal company,—the servant became the employee of the latter for the time being, and on the evidence he must be found to have assented to this, although remaining in the general employment of the ice company. (*Coughlan* v. *Cambridge, supra; Hasty* v. *Sears,* 157 Mass. 123, [34 Am. St. Rep. 267,

31 N. E. 759]; *Samuelian v. American Tool & Machine Co.*, 168 Mass. 12, [46 N. E. 98], and cases cited.)

"*Pigeon's Case*, 216 Mass. 51, [Ann. Cas. 1915A, 737, 102 N. E. 932], relied on by the employee, is distinguishable. In that case the driver was on his way to water the horse which was owned by Shaw, the general employer, who retained the general direction of the employee except so far as his control was surrendered to the city of Springfield. This relation of control included the care of the horses to the extent, at least, of seeing that they were watered. When injured, the employee was under the control of the original master and occupied in his work, and not engaged in the business of the city of Springfield nor under its direction. . . . This well-established principle of the common law which holds that an employee who is lent to a special employer as distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is lent, applies as well to cases arising under the Workmen's Compensation Act as to those at common law."

This decision is based in part upon a consideration of the provisions of the Massachusetts workmen's compensation law, differing from our own statute, as therein stated. If we follow our own action in *Ayer* v. *Industrial Accident Commission, supra,* and the decision of the district court of appeal (second district) in *Kirkpatrick* v. *Industrial Accident Commission,* 31 Cal. App. 668, [161 Pac. 274], holding the general employer liable, and the Massachusetts court in the Scribner case, holding the special employer, we reach the same conclusion as the New York court did in *De Noyer* v. *Cavanaugh, supra,* holding both or either liable. In the instant case, however, we are not required to go so far. The decision of the commission was based upon the joint control by the partnership and the Cement Company, and upon their finding as to such joint control their award should be affirmed. There is nothing in the decision in *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, [159 Pac. 721], cited by petitioners, inconsistent with this view. There the claimant, who had been given an award by the accident commission, was held to be an independent contractor, furnishing his own teams and drivers other than himself. This conclusion was reached by an application of well-established principles of law to the facts therein stated.

With reference to the claim of the Ocean Accident & Guarantee Corporation, that its policy included the accident in question by reason of mutual mistake, the commission found the facts as follows: ''That defendant Wellman-Lewis Company was at the time of said injury insured against liability in defendant Employers' Liability Assurance Corporation and . . . was at said time also insured against liability in the defendant Ocean Accident & Guarantee Corporation, and that the policy issued by said insurance carrier was unlimited and covered said employer's liability to all of its employees within the state of California. That the oral intention and understanding between defendants Wellman-Lewis Company and the Ocean Accident & Guarantee Corporation at the time the policy of the latter insurance carrier was issued was that said policy should cover only employees employed at a magnesite mine at Hemet, California, but that said policy was not in fact limited to correspond to such oral intention until after the sustaining of this injury by J. H. Coulter, and that none of the other parties to this proceeding were parties to said understanding prior to said injury, and the said employee, the applicant, and defendants Riverside Portland Cement Company, and Aetna Life Insurance Company, have at no time been parties to such agreement.'' The facts found by the commission indicate mutual mistake, it being the intention of the Wellman-Lewis Company that the work at the Cement Company's plant should be covered by the insurance policy issued by the Employers' Liability Assurance Corporation, and that the work at Hemet should be covered by the Ocean Accident & Guarantee Corporation. After the happening of the accident, to wit, on January 5, 1918, a rider was attached to the policy of the latter company containing the following provision: ''It is understood and agreed that the operations covered . . . are hereby limited to cover at Hemet, Riverside County, State of California, only, and Statement (4) of said policy is hereby amended to read as follows: 'Hemet, Riverside County, State of California.' '' It is true that the parties to this contract of insurance could not amend the policy, after an accident, to defeat rights of compensation that had accrued before the amendment, and if the addition to the contract was in fact an amendment of the policy of insurance by mutual consent, the rights of Mrs. Coulter could not be affected thereby. If, however, the policy issued differed from that actually contracted

for and by mutual mistake of the parties expressed an agreement not intended by them, there is no reason why they could not correct the provisions of the policy to state their actual intent, unless for some reason they would be estopped from doing so. There is no showing here that any of the parties whose rights are involved ever knew of the existence of this policy previous to the accident, or acted upon it in any way. There is no evidence that deceased had any knowledge of the policy in question. His rights as an employee resulted from his status as such employee (*North Alaska Salmon Co.* v. *Pillsbury,* 174 Cal. 1, [L. R. A. 1917E, 642, 162 Pac. 93]), and not because of any interest he had in the policy or knowledge of its existence. We are not called upon to pass upon the question as to whether or not the Industrial Accident Commission could permit the reformation of a policy of insurance where the question of the mistake was disputed. Here the parties actually consented to the amendment of the contract to conform to their intentions, and it was so amended.

The point is made that there is no sufficient evidence to justify the finding that the death of the decedent arose out of his employment, for the reason that such evidence consisted in part of his hearsay declarations. The amendment to the law, passed in 1915 (Stats. 1915, pp. 1079, 1102 sec. 77(a)) expressly permits such testimony, and the evidence, therefore, is sufficient. (*Western Indemnity Co.* v. *Industrial Accident Commission,* 174 Cal. 315, [163 Pac. 60].)

The awards against the Aetna Life Insurance Company and the Employers' Liability Assurance Corporation, Limited, of London, England, are affirmed, and the award against the Ocean Accident & Guarantee Corporation is annulled.

Sloss, J., Richards, J., *pro tem.,* Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.

Shaw, J., Sloss, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.