[Civ. No. 25457. Second Dist., Div. Two. Mar. 26, 1962.]

FLORENCE BROWN ANGLE, Plaintiff and Respondent, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant and Respondent; SAFEGUARD INSURANCE COMPANY, Defendant and Appellant.

William H. Levit, Herbert Z. Ehrmann and Long & Levit for Defendant and Appellant.

Detrixhe, Laughlin & Brown for Plaintiff and Respondent.

Hunter & Liljestrom for Defendant and Respondent.

FOX, P. J.—This is an action to collect upon contracts of fire insurance in which there is a dispute between the two defendant companies as to which of the defendant companies is liable or, if both are liable, in what proportions. Defendant Safeguard Insurance Company appeals from a judgment apportioning the loss more favorably to defendant United States Fidelity and Guaranty Company.

On August 1, 1958, at the request of the Southern California Building and Loan Association, which company held a first deed of trust on property owned by plaintiff, appellant Safeguard Insurance Company, hereinafter referred to as Safeguard, for a valuable consideration, issued a California Standard Form fire insurance policy on said property naming plaintiff as insured with loss payable to Southern California Building and Loan Association and Frank Leight, the holder of a second deed of trust on said property. This policy recited a term commencing on September 10, 1958, and ending on September 10, 1961, and provided $10,000 coverage on the dwelling house on the property and $1,890 coverage for loss of rental income.

Neither plaintiff nor United States Fidelity and Guaranty Company, hereinafter referred to as United, had any knowledge of the existence of the Safeguard policy until after September 25, 1958 (the date of the hereinafter referred to fire).

Between September 1, 1958, and September 10, 1958, plain-

tiff applied for and obtained from United, for a valuable consideration, a written fire insurance covering note (or binder) on the same property naming plaintiff as insured with loss payable to Southern California Building and Loan Association and Frank Leight. This covering note recited a term commencing on September 10, 1958, and ending on November 10, 1958, and provided $17,000 coverage on said dwelling house and $1,000 coverage for loss of rental income. Said covering note was subject to the provisions of the California Standard Form Fire Insurance policy.

On September 25, 1958, a fire occurred on the property causing damage to the dwelling house in the sum of $6,530.26 and loss of rental in the sum of $495. There was no dispute as to the amount of the losses.

The trial court found that both the policy issued by Safeguard and the covering note issued by United were in full force and effect on September 25, 1958, the date of the fire.

On February 13, 1959, United, acting on its own initiative, issued a fire insurance *policy* to replace the previous *binder*.[1] This policy recited a term commencing on September 10, 1958, and ending on September 10, 1961,[2] and provided $7,000 coverage on the dwelling house and $700 coverage for loss of rental. Said policy was accepted by the plaintiff upon the representation of United that she would suffer no reduction in the amount due her for the fire loss by reason of her acceptance of said policy.

On March 4, 1959, plaintiff filed sworn proof of loss with Safeguard in the sum of $4,336.33 and with United in the sum of $2,688.93, based on United paying 7/17ths of the dwelling loss and all of the rental loss. Said apportionment was promptly objected to by appellant Safeguard. On March 9, 1959, United issued its draft to plaintiff in the sum of $2,688.93, which draft was never negotiated by plaintiff and remained in the possession of plaintiff or her attorneys until the time of trial.

On June 10, 1959, plaintiff filed an amended sworn proof of loss with appellant Safeguard in the sum of $2,913.62 and with United in the sum of $4,111.64, based on United paying

---

[1]The insurance contract of September 10, 1958, will hereinafter be referred to as the United *binder*; the insurance contract of February 13, 1959, will hereinafter be referred to as the United *policy*.

[2]The trial court's findings state that the expiration date is November 10, 1958, but this is an error as can be seen from an examination of the United policy.

17/27ths of the dwelling loss and all of the rental loss. Said apportionment was promptly. objected to by United. On July 2, 1959, appellant Safeguard issued its draft to plaintiff in the sum of $2,913.62, which draft was never negotiated by plaintiff and remained in the possession of plaintiff or her attorneys until the time of trial.

The trial court apportioned the loss on the theory that a rescission had taken place between United and plaintiff. This rescission, although effected after the loss, had the effect of replacing the United binder of $17,000 with the new policy of $7,000. However, with respect to the rental, it appears that the trial court held that no rescission had taken place.

The crucial issue involved in this case is whether there can be a rescission of an insurance policy after the event giving rise to the liability occurred, when the effect of such rescission would be to increase the pro rata liability of another insurance company. The answer to this question depends upon a further inquiry: Does an insurance company in these circumstances have a "right" to prorate its liability and, if so, does such right vest upon the occurrence of the event that gives rise to that liability? The answer to this further inquiry must be in the affirmative.

The California Insurance Code, section 2070, provides that "[a]ll fire policies on subject matter in California shall be on the standard form, . . ." The standard form is set out in section 2071 where, as to prorating of liability it provides that the "company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

In *Fireman's Fund Ins. Co.* v. *Palatine Ins. Co.*, 150 Cal. 252 [88 P. 907], at page 255, the court stated: "Under the *pro rata* clause contained in all the policies,[3] each of the insurers, . . . was originally liable to the insured for such proportion of the loss . . . as the amount of the insurance . . . bore to the whole of the insurance. . . ."

In *American Automobile Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d 192 [318 P.2d 84], it was pointed out (p. 198) that "the problem becomes one of adjusting the insurers' equities in the light of the 'other insurance' provisions of their respective policies."

---

[3]There was such a clause in all of the policies involved in the case at bench.

762

The question *sub judice* therefore becomes: what is the amount of the "whole" insurance? As the policies originally existed at the time of the fire the whole insurance on the dwelling was $27,000 and the whole insurance for the rental loss was $2,890. The trial court found that this was the total amount of insurance in effect at the time of the fire.

United attempted to reduce its *pro rata* liability by foisting upon the insured a new policy providing for only $7,000 coverage on the dwelling and only $700 coverage for the rental loss. This was done *after* the fire had occurred! Plaintiff accepted this new policy upon the representation by United that she would suffer no loss by reason of her acceptance. The trial court erroneously concluded that this new policy was, in effect, a rescission and erroneously gave it retroactive application. It apportioned the loss on the basis that the whole insurance was $17,000 as to the dwelling but, oddly enough, the trial court apparently apportioned the loss of rental as though no rescission had taken place.

The United *binder* was a valid existing contract of insurance having full force and effect at the time of the fire. In *Law* v. *Northern Assur. Co. of London* (1913), 165 Cal. 394 [132 P. 590], it was pointed out (p. 402) that: "[t]he contract was one of *present* insurance. By it the defendant does not merely promise to insure, but by its very terms it 'hereby,' in the present 'secures' the plaintiffs from loss by fire. It has long been established that such a 'covering note' is itself a contract of present insurance."

It is therefore clear that the United binder, which the court specifically found to have been in full force and effect at the time of the fire, was part of the "whole insurance" covering plaintiff's dwelling within the meaning of the "Pro rata liability" clause of the Safeguard policy, and that the $17,000 dwelling coverage and $1,000 loss of rental coverage of said binder should have been included by the court in the apportionment.

In *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 P. 273], the court stated at page 442: "It is true that the parties to this contract of insurance could not amend the policy, after an accident, to defeat rights of compensation that had accrued before the amendment, and if the addition to the contract was in fact an amendment of the policy of insurance by mutual consent, the rights of . . . [a third party] could not be affected thereby."

The trial court's reasoning is based on the proposition that the question of rescission should be decided as though there had been no fire. It allowed rescission of the binder, after the fire, on the theory that there was a mutual mistake of fact, *i.e.*, at no time did plaintiff intend to have more than $17,000 fire insurance coverage on the dwelling house nor more than $1,000 coverage for loss of rental.

However, there can be no rescission where the rights of third parties would be prejudiced. ██ In *Beckwith* v. *Sheldon*, 165 Cal. 319 [131 P. 1049], the court stated (p. 324) : "It is, of course, fundamental that where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies. [Citation.]"

In the instant case, the right of Safeguard to have its liability prorated on the basis of the "whole" insurance, as it existed at the time of the fire, intervened. A rescission of the United binder, if given retroactive effect, would cause substantial injury to Safeguard by increasing its proportionate share of the total coverage.

██ Further, it is the general rule that an insurer, acting on its own initiative after a loss, cannot reduce its liability for the loss by issuing a policy different from the binder which was in effect at the time of the loss. In *American Surety Co. of New York* v. *Williford*, 243 F.2d 494, the court stated (p. 498) : "Appellant can not, by the mere act of issuing a policy subsequent to the accrual of a claim under a pre-existing oral contract and dating its coverage to a period subsequent to the time of the accrual of the claim, escape liability upon such claim if a valid oral contract of insurance protecting against such claim has been established."

██ The retroactive effect given the United policy by the trial court could be defensible only if the new policy were in the nature of a reformation rather than a rescission. (See *Ferrar* v. *Western Assur. Co.*, 30 Cal.App. 489 [159 P. 609, 611] ; *Browne* v. *Commercial Union Assur. Co.*, 30 Cal.App. 547 [158 P. 765].) But in this case, there can be no reformation since the contract recited the exact intention of the parties. There is no underlying agreement to which the court could look. "But where, as here, the parties agree in writing upon specific terms of the coverage, the Company cannot avoid liability by issuing a policy which does not cover the

risk contemplated by the binder. Especially after the loss has occurred and liability attaches. It cannot promise one contract and fulfill it with another." (*Republic Ins. Co.* v. *French*, 180 F.2d 796, 798.) In the same manner, United could not avoid its *pro rata* liability by issuing a new contract after the loss so as to affect the rights of Safeguard. (See *Apparel Manufacturers' Supply Co.* v. *National Automobile & Casualty Ins. Co.*, 189 Cal.App.2d 443 [11 Cal.Rptr. 380].)

The argument of respondent that the retention of the draft sent to plaintiff amounted to an accord and satisfaction has no validity whatsoever. In *Grayhill Drilling Co.* v. *Superior Oil Co.*, 39 Cal.2d 751 [249 P.2d 21], the court stated at page 754 that in order to have an accord and satisfaction "the debtor must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full saisfaction." In the present case, United not only did not make it clear that the draft was to be in full satisfaction but impliedly represented that it was not. This implication follows logically from the express representation made by United that plaintiff would suffer no reduction in the amount due her by reason of her acceptance of the United policy. The draft was delivered under the terms of the policy and not the binder. United should therefore be estopped to set up the defense of accord and satisfaction.

Furthermore, "[t]he general rule is well settled with respect to the circumstances giving rise to an accord and satisfaction of a disputed claim by the acceptance of a check for an amount smaller than that claimed by the creditor . . . and such disputed claim is not discharged by the retention of a check for a smaller amount unless the check is tendered with an explicit statement or pursuant to an explicit understanding that it is offered as full payment. . . . In other words, it must unequivocally appear that the check is offered only upon condition that it be accepted, if accepted at all, as full satisfaction of the disputed claim." (*Messer* v. *Tait's, Inc.*, 121 Cal.App. 698, 700-701 [9 P.2d 536].)

The trial court should have apportioned the liability for the dwelling on the basis that the whole insurance amounted to $27,000. The apportionment, however, was correct as to the rental loss.

Neither interest nor costs should be awarded in any judgment against Safeguard since Safeguard, on July 2, 1959, delivered to plaintiff its draft in the sum of $2,913.62 (which

sum is more than the corrected pro rata liability of Safeguard).[4] Interest and costs should be borne by United.

The judgment is reversed with directions to enter judgment not inconsistent with the views expressed herein, United to pay costs on appeal.

Ashburn, J., and Herndon, J., concurred.

[4] A corrected proof of loss was not filed with Safeguard until June 10, 1959, and, according to § 2071 of the Insurance Code, "[t]he amount of the loss for which this company may be liable shall be payable 60 days after proof of loss . . . is received. . . ." Therefore, the delivery of the draft on July 2, 1959, was timely.