[Civ. No. 30674. Second Dist., Div. One. Mar. 14, 1967.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY, INC., Plaintiff and Appellant, v. PACIFIC INDEMNITY COMPANY, Defendant and Respondent.

Talbert & Cuthbert and Robert S. Talbert for Plaintiff and Appellant.

Waters, McCluskey & Corcoran and William W. Waters for Defendant and Respondent.

FOURT, J.—Appellant Hartford Accident and Indemnity Company, Inc., (hereinafter called Hartford) appeals from a summary judgment for defendant granted by the superior

court in Hartford's action for declaratory relief against Pacific Indemnity Company (hereinafter called Pacific) to recover the costs of defending a malpractice suit wherein it was determined that Pacific was the responsible insurer.

This matter arose as a consequence of the dental malpractice suit brought by Sarah Mandell v. Melvin Lasken, D.D.S. (hereinafter called Doctor Lasken) to recover $36,500 damages. During the period herein relevant Doctor Lasken carried two consecutive policies of professional liability insurance, the first with Hartford for the year preceding and terminating on July 10, 1960, and the second with Pacific running from that date through July 10, 1961. Sarah Mandell's complaint filed on February 24, 1961, alleged merely that on June 1, 1960, she engaged the dental services of Doctor Lasken for a course of treatment which ultimately resulted in her damage.

Hartford defended the Mandell action and Pacific, although advised of the litigation, declined to participate. The court found Doctor Lasken responsible for the damage to Sarah Mandell and also found that the drilling operation from which the injury resulted, perforating the root canals of two teeth which thereafter required extraction, occurred on November 10, 1960, during Pacific's policy period. Doctor Lasken never requested that Pacific defend him and Pacific refused Hartford's request to participate in his defense on the grounds that the complaint did not allege facts which brought the damage within Pacific's liability period and, in any event, Pacific attributed the damage to faulty diagnosis made by Doctor Lasken during Hartford's coverage period. Pacific finally paid the entire $2,000 judgment recovered by Sarah Mandell but refused to pay any part of the costs of defense.

Hartford thereupon instituted the subject action for declaratory relief to determine Pacific's liability for the litigation expenses and both parties filed motions for summary judgment. The court, by memorandum opinion, indicated that Pacific's motion was granted because Hartford merely performed its contractual obligation to its assured and was not entitled to contribution from Pacific with respect to the expenses thus incurred.

Hartford contends on appeal that the summary judgment was improperly granted since Pacific breached its initial duty to defend Doctor Lasken and because at the trial Pacific was found responsible to pay the entire judgment and, consequently, it should pay the costs incidental to the defense. These

contentions are supported by the recent decision of our Supreme Court in *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455].

Each policy of insurance contained a clause providing for the insurance company to defend its assured in the event of a claim or litigation arising from an occurrence covered thereby even if the insurance company knew or had reason to believe the claims groundless. Pacific, therefore, clearly owed to Doctor Lasken an enforceable duty to defend the Mandell action where the allegations of the complaint were sufficiently ambiguous to place its position in doubt.

"We have presented to us, therefore, an action based upon a claim that may or may not be covered by the policy. In such a situation the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy." (*Firco, Inc.* v. *Fireman's Fund Ins. Co.*, 173 Cal.App.2d 524, 528 [343 P.2d 311].) Pacific will obviate this duty only by the explicit consent of its insured or by a final judgment in its favor in an action for declaratory relief.

"[T]he insurer . . . [has] the duty to defend . . . and . . . the determination in the declaratory relief action of no liability under the policy . . . [does] not have the effect of retroactively relieving the insurer of such duty to defend. However, once the judgment in the declaratory relief action becomes final . . . the insurer's duty to defend such actions shall cease . . ." (*Fireman's Fund Ins. Co.* v. *Chasson,* 207 Cal.App.2d 801, 807 [24 Cal.Rptr. 726].)

The principal issue herein is whether the insurer under a policy which preceded but did not run concurrently with Pacific's policy could, in this action for contribution, be subrogated to the insured's right to enforce Pacific's duty to defend. We conclude that it could.

The courts have experienced no difficulty in ordering contribution to indemnity from concurrent insurers where policies of various companies cover several individuals involved in the same accident or where the same negligent party is covered by more than one full coverage insurance policy, but they have been inclined to distinguish, until recently, the duty of the insurance company to indemnify and its separate and independent duty to defend. Where more than one insurance company fully insures the same risk and one pays the total loss, it may enforce contribution by the others since coinsurers

stand in the position of cosureties, but where the insurance coverage is pro-rata the insurance companies are not cosureties and one who pays in excess of its pro-rata share cannot, without agreement, obtain contribution to indemnity from the others. (*Fidelity etc. Co.* v. *Fireman's Fund Indem. Co.,* 38 Cal.App.2d 1 [100 P.2d 364].)

The costs of defense have been distributed among insurance companies with concurrent potential liability in proportion to their adjudicated liabilities for indemnity. Thus, where excess coverage or pro-rata insurance clauses are found the court generally decrees contribution to the costs of defense apportioned to the responsibility to indemnify or to the face amounts of the respective policies where appropriate. (*Oil Base, Inc.* v. *Transport Indem. Co.,* 143 Cal.App.2d 453, 468-470 [299 P.2d 952].)

Where, however, the assured was covered by concurrent policies supplying the same or similar indemnity and both providing for his defense, unless the assured himself requested that both defend him, the one notified and initially assuming the responsibility could not, on the basis of its own request, enforce contribution by the other company if it declined to participate in the defense. (*Financial Indem. Co.* v. *Colonial Ins. Co.,* 132 Cal.App.2d 207 [281 P.2d 883].) This conclusion was justified on the basis that the duty to defend was absolute and neither insurer could, by the conduct of the other, be excused therefrom; since, however, the duty to defend was also severable and independent of the undertaking to pay damages, contribution could not be obtained by one insurance company from the other which avoided its duty. The duty to defend was defined as a responsibility personal to the insurer and one that it was not entitled to divide or share. (*Financial Indem. Co.* v. *Colonial Ins. Co., supra,* p. 210.) This result has been disapproved recently by the California Supreme Court. (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27.)

 There is no contractual relationship between either concurrent coinsurers or consecutive insurers upon which an action for contribution may be based. " 'The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.' " (*Truck Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483, 489-490 [14 Cal.Rptr. 408].)

■ " 'Neither having any contract right against the other, but both being under contractual obligations in respect to the same risk, it remains only to determine the respective equities. . . .' . . . One who has a superior equity growing out of contract may enforce it by way of subrogation although the contract was made with a third party." (*American Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, 196 [318 P.2d 84].)

■ The California Supreme Court in disapproving *Financial Indem. Co.* v. *Colonial Ins. Co., supra, inter alia* extended the application of equitable principles in these cases. "Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers." (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27, 37.)

We conclude, moreover, that there is no substantial basis for altering the consequences of such refusal depending upon whether the policies ran concurrently or consecutively, and whether the assured personally requested defense by a specific insurer, or another insurance company, upon notice by the assured, on investigation determined and notified the other insurer of its potential liability. The detriment to the insured which might otherwise result has been recognized by this court in a decision involving excess coverage clauses, each phrased differently, which, if construed as the respective parties argued, would totally fail to protect the assured. (*Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d 453.)

■ In the instant case, it cannot be said that Hartford was a volunteer when it undertook the defense of its former assured since the face of the complaint established its duty, nor that Pacific received no benefit where its potential liability might have been $36,500 and the defense was effective to reduce the judgment to $2,000. ■ There can be little question that Pacific, upon adequate notice of potential responsibility, deliberately breached the obligation of defense which it owed to its insured and thus, even though it ultimately acknowledged its duty to indemnify, it will receive an inequitable economic advantage if it is not required to contribute to the cost of defense. Since Hartford benefited also by the defense it inter-

posed, the only issue is the proportion in which this expense should be shared. This policy is tailored to encourage insurance companies to cooperate and discourage them from leaving the assured party in a hiatus between two or more of his protectors. ''So construed, neither policy would attach to the risk and the insured would be deprived of coverage. Under this circumstance the court must prorate the loss between the two policies up to their respective limits of liability . . .'' (*Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d 453, 468.) We cannot justify a result which would establish on the part of each company an absolute duty of defense on a rationale which would provide to each in the same breath means to escape the obligation.

The factual issue thus established by the pleading is the basis upon which the liability for costs of defense should be prorated. We suggest that in this instance it be shared equally.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.