[Civ. No. 29618. First Dist., Div. One. Feb. 26, 1973.]

SPOTT ELECTRICAL COMPANY et al., Plaintiffs and Appellants, v.
INDUSTRIAL INDEMNITY COMPANY,
Defendant, Cross-complainant and Respondent;
CALIFORNIA COMPENSATION AND FIRE COMPANY,
Cross-defendant and Appellant.

**COUNSEL**

Bronson, Bronson & McKinnon and Paul J. Sanner for Plaintiffs and Appellants and for Cross-defendant and Appellant.

Connolly, Johnson & Hothem and William J. Connolly for Defendant, Cross-complainant and Respondent.

**OPINION**

WEINBERGER, J.*—Spott Electrical Company, Jones Electric Company, and John and Paula Turner filed a complaint for declaratory relief against defendant Industrial Indemnity Company (hereafter Industrial) in which they asked the court to declare that a 30-day binder issued by Industrial covered plaintiffs with respect to claims filed during the effective period of the insurance, and that Industrial was obligated to defend and indemnify plaintiffs with respect to any actions alleging plaintiffs' liability for a fire which occurred during the period of coverage.

Industrial filed an answer denying the material allegations of the complaint and alleging that the complaint did not state a cause of action. It also cross-complained against California Compensation and Fire Company (hereafter California) seeking declaratory relief to the effect that California was obligated to defend and indemnify plaintiffs under a binder and policy

---

*Assigned by the Chairman of the Judicial Council.

issued by California which allegedly covered the plaintiffs during the period in question.

California, represented by the same counsel as plaintiffs, filed an answer to the cross-complaint which, in effect, admitted that its policy covered plaintiffs, but on a prorated basis, and asked the court to declare that Industrial was obligated to share pro rata in the defense and indemnification of the insureds.

The action was tried without a jury and the court held that Industrial had no obligation to defend or indemnify the insureds with respect to the claims in question and that Industrial was entitled to a judgment as prayed on its cross-complaint against California. Judgment on the complaint and cross-complaint was entered in accordance with these findings and a timely notice of appeal was filed by plaintiffs and cross-defendant.

Before discussing the real issue in the case, which is between Industrial and California, and before setting out the factual background of the case, it would be helpful to place the matter in proper perspective. One Louis Stocklmeir of the brokerage firm that placed the coverage with California and obtained the binder from Industrial was asked by defense counsel whether, to his understanding, the suit was being prosecuted by the plaintiffs or by California. Over the objection of counsel for plaintiffs and California, counsel for Industrial was permitted to prove that California obtained permission from the plaintiffs to file suit in their name, but that actually the suit was between the two insurers and the plaintiffs were concerned only with receiving protection from one or the other or both. Counsel for California conceded that his client was obligated, according to the terms of its policy, to defend and indemnify the plaintiffs but urged the court to find that Industrial was also obligated.

On the basis of this concession and testimony the court found that: "[I]t is not true that plaintiff contends defendant had an obligation to defendant in the action brought for damages against it arising out of the Fong fire, and, in fact, it is California and not plaintiff, which is making this contention; that plaintiff has never communicated directly to defendant any claim or contention that defendant has breached any contract of insurance with it."

Appellants claim that the court clearly considered it significant that California and not plaintiffs brought the suit; therefore, if the evidence is irrelevant or the finding is unsupportable, the judgment must be reversed. They claim that even if it is true that California, rather than plaintiffs, are asserting the obligations of Industrial, the finding would be irrelevant in that it is well established that where two insurers should share pro rata in a loss,

either can assert the rights of the insured against the other. (See *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 34 [17 Cal.Rptr. 12, 366 P.2d 455]; *Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co.* (1967) 249 Cal.App.2d 432, 435 [57 Cal.Rptr. 492]; *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 489 [14 Cal.Rptr. 408].) This is in keeping with the rule urged by plaintiffs that the policies should be construed in favor of maximizing coverage even where the insured's rights are being asserted by another carrier. (See *Truck Ins. Exchange* v. *Torres, supra,* 193 Cal. App.2d 483, 496.) These cases are based on the assumption that the insured has rights against a third party, including another insurance company, which may be asserted on the basis of equitable subrogation. A further re-cital of the facts in the instant case will reveal that plaintiffs had no rights which they, or anyone on their behalf, could assert against Industrial.

The plaintiffs' action is for declaratory relief, and the "fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject. . . ." (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 716, p. 2338, and cases cited therein.)

■ The court's inquiry here was directed to the existence of such a con-troversy since defendant's answer had alleged that the complaint did not state a cause of action against it. Because the evidence shows that no such controversy in fact existed, the court was correct in viewing the case as one between two carriers and properly granted judgment for defendant against plaintiffs for the reason that the latter, through their authorized agent, had ordered cancellation of Industrial's binder.

Industrial's cross-complaint against California seeks a declaration of the right, if any, of California to require a pro rata contribution from Industrial to the defense costs incurred and any loss sustained by it in the suits filed against the plaintiffs because of the fire. As was stated in *Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co., supra,* 249 Cal.App.2d 432, at page 436, "There is no contractual relationship between either concurrent coinsurers or consecutive insurers upon which an action for contribution may be based. ' "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden." ' (*Truck Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483, 489-490 [14 Cal.Rptr. 408].)"

To determine what "equitable principles" are applicable in the case at

bench it is necessary to consider the following facts established by the evidence.

Industrial insured plaintiffs under a comprehensive liability policy for the term of March 1, 1965, to March 1, 1966. Louis Stocklmeir was the insurance broker for plaintiffs during this period, and he testified that in the fall of 1965 he explored with California the possibility of their handling the comprehensive coverage when Industrial's policy expired. California had already been given some of plaintiffs' insurance coverage formerly handled by Industrial and it informed Stocklmeir that it could be competitive regarding the comprehensive coverage. In late February 1966, Stocklmeir sought a bid from California and from Industrial and the Insurance Company of North America. He testified that as plaintiffs' broker, he had authority to place the comprehensive policy according to his best judgment. He admitted that it was his intention to place the policy with California if their quote was competitive and their price was lower. Stocklmeir presented the proposed coverage to the three insurance companies and received a quotation of $14,142 from Industrial on March 7 and one of $10,738 from California on March 8. The Insurance Company of North America did not submit a quotation.

By reason of a phone call from Stocklmeir to Industrial's San Jose office on February 24, 1966—four days before the March 1 expiration date of Industrial's comprehensive policy—Industrial mailed out a written binder of insurance on February 28, effective March 1, 1966, through March 30, 1966. The binder, in effect, insured the plaintiffs according to the terms, conditions, limits and provisions of the expiring policy, except as to cancellation. The following paragraph under the heading "Terms" covered the cancellation feature of the binder: "A pro rata premium charge will be made for the coverage afforded by this Binder unless policies are issued and accepted by the Insured. The issuance of a Policy shall cancel this Binder. This Binder may be cancelled by the Company by mailing to the Insured at the address shown above, written notice stating when, not before 12:00 o'clock noon of the third business day following the date of mailing, such cancelation [sic] shall be effective. Delivery of written notice shall be equivalent to mailing." A day or two before March 1, 1966, Harold Parsons, casualty manager for California, talked to Stocklmeir by phone. Parsons testified that at that time he knew nothing about Industrial's binder. Parsons issued an oral binder to plaintiffs with the same terms of coverage as Industrial's previous policy. He testified that it was his understanding that California had the coverage from March 1 on and that a policy would be issued effective March 1 for the ensuing one-year period. He stated that there was no conversation or suggestion with respect to California's losing this par-

ticular policy for that year because once the binder issued "it is just a foregone fact."

Parsons wrote in a company file around March 1 that "Although business is ours, we must quote in advance." He stated that this meant there was just a matter of negotiating the price. He also admitted, however, that it was merely his "assumption" that, as of the time the verbal binder was made by him, it had been decided that the policy would be issued by California. He stated that as far as he was concerned when he made the verbal binder he contracted on behalf of California to issue a policy of liability insurance effective March 1, 1966. Parsons then turned the mechanics of issuing the policy over to another employee of California, and personnel difficulties at California caused considerable delay in the issuance of the policy. The actual policy was not made out until April 14, although it bore an effective date of March 1, 1966. California was paid a premium for the period beginning March 1.

On March 23, 1966 a fire occurred at the Fong residence in Lucas Valley, Marin County, and as a result of the fire, plaintiffs were sued. Stocklmeir informed Industrial of the loss on March 25 or 29 and Industrial in turn informed California on April 1. In the interim, Stocklmeir had on March 29 notified Industrial that its binder was to be cancelled "flat." Stocklmeir testified that cancelling a binder flat means that there is no coverage and no premium charged, and essentially no exposure during the binder period. Wesley Branaman, the Industrial underwriter to whom Stocklmeir made his cancellation request, also testified that the term cancelling flat means that no coverage is afforded and no premium is earned or to be charged. Robert Nevins, a partner in an insurance brokerage firm, testified that the term "cancelled flat" as used in the industry: ". . . means you are eliminating, closing out the binder with no premium charge and no liability on the part of the company you had bound. And that comes about normally because a broker has provided coverage as of the date of inception, the date of the binder, or because you have had one or more companies on the line and their coverage was not wanted at that point, going back to the original date of the binder." It is noteworthy that the plaintiffs had no direct dealings with either Industrial or California and none of the plaintiffs testified. The record indicates that Stocklmeir had complete authority to determine all matters connected with their insurance needs. According to the answer to the cross-complaint filed on behalf of California, Stocklmeir and Stocklmeir were also authorized agents of both Industrial and California and their appointments as such were on file in the records of the Insurance Commissioner of the State of California. Thus we have one person, Mr. Louis Stocklmeir, acting for all parties to this litigation.

Appellants claim the lower court, in effect, held that Industrial's binder was retroactively cancelled and that such cancellation cannot be effected to California's prejudice after the loss has occurred. Respondent devotes much time in its brief to establish that California did not issue a written binder as did Industrial, but rather an oral contract to insure. The claim is then made that the formal policy merged into the oral one. The distinction between a binder and an oral agreement to insure is irrelevant, since the point of significance is that both California and Industrial, prior to the cancellation of Industrial's binder, had insurance contracts of one form or another in effect. California has never taken the position that it did not have coverage.

■ A "binder" is a temporary contract of insurance. (See *Eliopulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845, 850-853 [33 Cal.Rptr. 449]; *Angle* v. *United States Fid. & Guar. Co.* (1962) 201 Cal.App.2d 758, 762 [20 Cal.Rptr. 391]; see also 12 Appelman, Insurance Law and Practice, ch. 263, § 7221, pp. 306-307.) ■ Whether or not a valid binder exists is a question of fact insofar as a finding comprehends issues relating to the credibility of witnesses or the weight of the evidence, but a question of law insofar as a finding embraces a conclusion that such factual elements do not constitute a valid oral binder. (See *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287].)

Here there is no question but that Industrial issued a binder for the period of March 1 through March 30. What is also clear is that California also had a contract for the same period, whether it be characterized as a binder or an oral contract to insure. ■ Oral contracts to insure are valid (see *Gold* v. *Sun Insurance Co.* (1887) 73 Cal. 216, 217-218 [14 P. 786]; *Kazanteno* v. *Cal.-Western etc. Ins. Co.* (1955) 137 Cal.App.2d 361, 370 [290 P.2d 332]; *Guipre* v. *Kurt Hitke & Co.* (1952) 109 Cal.App.2d 7, 15 [240 P.2d 312]), and " 'Where a valid parol contract of insurance has been entered into, the policy to be issued thereon is simply the memorial of the prior parol contract, and even though the policy be not delivered until after the loss occurs, the insurance is deemed effective from the time agreed upon in the parol agreement, irrespective of any delivery of the policy.' " (*Kazanteno* v. *Cal.-Western etc. Ins. Co., supra,* at p. 370.)

The underlying rationale behind this rule is the notion that "since the execution of a contract in writing supersedes all the negotiations or stipulations concerning its subject which preceded or accompanied the execution of the instrument, whether the law requires it to be written or not, an oral contract of insurance is merged into a subsequent written contract. . . ." (27 Cal.Jur.2d, Insurance, § 182, p. 671; Civ. Code, § 1625.)

■ Respondent argues that it was proper for the court to infer that the

agreement plaintiffs and California made was to cancel by substitution the binder of Industrial. This inference is supported by the evidence of Stocklmeir's actions and words regarding the contracts offered by Industrial and California; by Parson's testimony as to his view of the negotiations; and by the intention to cancel flat the Industrial binder with no premium charge, just as though it had never been issued.

Under the terms of Industrial's binder it could be cancelled by the issuance of a policy or written notice to the insured by Industrial. In *Glens Falls Ins. Co.* v. *Founders' Ins. Co.* (1962) 209 Cal.App.2d 157 [25 Cal.Rptr. 753, 3 A.L.R.3d 1058], it was held that insurance contracts can generally be cancelled only pursuant to their terms or by mutual consent. The court in *Glens Falls* stated: "The distilled rule of *Apparel Mfrs. Supply Co.* [v. *National Auto & Cas. Ins. Co.*], 189 Cal.App.2d 443 [11 Cal.Rptr. 380] is that in order for cancellation to take place by the substitution of one policy for another it must be done by mutual consent or agreement." (Pp. 169-170.) ▇ Cancellation may be effected by express or implied mutual agreement of the insurer and the insured independently of the existence of conditions authorizing cancellation under the provisions of the policy. (*Ohio Cas. Ins. Co.* v. *Northwestern Mut. Ins. Co.* (1971) 17 Cal.App.3d 204, 208-209 [94 Cal.Rptr. 586] and see cases cited therein.) Although there may be a conflict as to whether substitution has occurred, this conflict is addressed to the trier of fact. (*Strauss* v. *Dubuque F. & M. Ins. Co.* (1933) 132 Cal.App. 283, 293 [22 P.2d 582].)

There is a further rule which appellant contends is applicable here, however, and that is that there can be no cancellation when the rights of third parties would be prejudiced. (See *Angle* v. *United States Fid. & Guar. Co.*, *supra*, 201 Cal.App.2d 758, 763; *Beckwith* v. *Sheldon* (1913) 165 Cal. 319, 324 [131 P. 1049].) California argues that since it was stipulated at trial that if Industrial did have coverage, it would share pro rata with California, then to allow Industrial and plaintiffs mutually to assent to a substitution or cancellation would increase California's proportionate share of the coverage. (Cf. *Angle,* at p. 763.)

In *Angle* the plaintiff owner had acquired coverage in the sum of $17,000 through a binder issued by United States Fidelity and Guaranty Company (hereafter United). Unbeknownst to the owner, the trust deed holder of the property had acquired a policy from Safeguard Insurance Company (hereafter Safeguard) in the sum of $10,000. A fire occurred and United, acting on its own initiative, replaced its binder with a policy in the sum of $7,000. Plaintiff accepted said policy upon United's representation that she would suffer no reduction in the amount due her for the loss. The court held that

a recission of the United binder, if given retroactive effect, would cause substantial injury to Safeguard by increasing its proportionate share of the total coverage since the right of Safeguard to have its liability prorated on the basis of the "whole" insurance as it existed at the time of the fire had intervened. Thus, it required proration based on the $10,000 and $17,000 amounts of coverage.

*Angle* is clearly distinguishable from the case at bench for the reason that there two different entities, each intending to insure its own interest, ordered separate coverage, whereas here one person placed coverage with two companies with no intent to have double coverage or to pay two premiums. But the major distinction between *Angle* and the present case is that here an agent fully authorized to act for the insureds ordered Industrial's binder cancelled flat, whereas in *Angle* one company acted unilaterally in issuing a policy for $10,000 less than its binder, and misled the plaintiff into believing that her interests would not be affected adversely. It was a flagrant effort to reduce United's pro rata share of the loss from 17/27th to 7/17ths.

We agree entirely with the result reached in *Angle* but disagree with some of the language contained therein, unnecessary to the decision, to the effect that an insurance company has a "right" to prorate its liability and that such right vests upon the occurrence of an event that gives rise to a claim or potential claim. The application of such rule to the case at bench would lead to an absurdity.

It is clear in the instant case that Stocklmeir intended to protect his clients and certainly did not intend to purchase or pay for double coverage, permanent or temporary. The California policy, predated to March 1, 1966, was prepared and delivered on or about April 14, with full knowledge of the possible claims resulting from the March 23 fire. Upon learning of the cancelled Industrial binder (presumably from Stocklmeir) California employed its counsel to file suit in the insureds' names to obtain a 50 percent contribution for a loss it had voluntarily assumed from the company it had successfully competed against and had underbid by about $4,000.

The case boils down to this—can California, in this situation, *insist* that its insureds keep and pay a pro rata premium of about $1,200 for a 30-day binder which the insureds did not intend to keep or pay for? Stated another way, must an insured keep coverage it does not want or need merely to afford contribution rights to an insurer that accepted a full premium for full coverage without any expectation of, nor right to expect, contribution from anyone? Our answer to both questions is "No." It is interesting to note that California, in its effort to reduce its liability by 50 percent relies on *Angle* which we have heretofore described as a flagrant attempt by United to re-

duce its liability by about 20 percent. Equitable considerations do not require that the plaintiffs purchase and pay for coinsurance solely for California's benefit.

The guiding principles applicable in this situation are applicable as aids in interpreting all contracts. Civil Code section 1636 provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (See also 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 217, p. 247, and cases there cited.) The mutual intention of the plaintiffs and California and Industrial was known only to Stocklmeir, he being an agent of each. In procuring binders from two carriers pending a final decision on his part as to which was to be favored with the business, he followed a well-known custom in the insurance industry. Custom and usage may, of course, be looked to as an aid to interpretation. (1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 225, p. 253.) ■ Acts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining what the parties meant by their acts. The conduct of the parties may be, in effect, a practical construction of what they intended. (1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 221, p. 249.)

■ The evidence supports the inference that Stocklmeir at no time intended to renew with Industrial, but procured the 30-day binder merely to assure continuity in coverage in the event that California's bid was not competitive. This interpretation of the facts finds support in the action of Stocklmeir, on behalf of plaintiffs, in ordering Industrial's binder cancelled flat after the bid of California was analyzed and found to be satisfactory.

The evidence also supports a finding that only the successful bidder would ultimately insure the plaintiffs. Thus, each binder was issued subject to an unwritten condition subsequent established by custom and usage in the insurance industry which permits brokers, in their discretion, finally to place coverage with one of several competing companies and obtain flat cancellations from the others. ■ Where insurers, with full knowledge that their agents are "shopping for price," engage in this type of competition they must know that their successful bid entitles them to collect a full year's premuim but also subjects them to full responsibility for losses which occurred during the binder period.

This case, like so many others involving inter-insurance company disputes, requires solution by the insurance industry, not by the courts. If the power which the companies have placed in the hands of agents and brokers

be deemed excessive or undesirable it is the companies' responsibility to curb that power. If California suffered loss here because of any wrongful or unauthorized act of its agent Stocklmeir in agreeing to a flat cancellation of Industrial's binder, its complaint should be directed against him, not against Industrial.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 28, 1973.